**In re TRACE INTERNATIONAL HOLDINGS, INC. et al., Debtors.**

**John S. Pereira, as Chapter 7 Trustee of Trace International Holdings, Inc., et al., Plaintiff,**

**v.**

**Dow Chemical Company, Defendant.**

**Bankruptcy Nos. 99–10425 SMB, 99–10426 SMB. Adversary No. 01–2949.**

United States Bankruptcy Court, S.D. New York.

Dec. 10, 2003.

Jaspan Schlesinger Hoffman LLP, Garden City, NY, for Plaintiff, Eugene P. Cimini, Esq. of Counsel.

Orrick, Herrington & Sutcliffe LLP, New York City, for Defendant, James L. Stengel, Esq., Steven J. Fink, Esq. of Counsel.

## MEMORANDUM DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

STUART M. BERNSTEIN, Chief Judge.

This case raises the novel application of judicial estoppel to inconsistent positions, both of which were taken successfully by the plaintiff in an earlier action against different parties. The defendant, Dow Chemical Company ("Dow"), was not a party to the earlier lawsuit, and has moved for summary judgment based on the inconsistency. For the reasons that follow, its motion is granted.

### BACKGROUND

The background to this dispute is set forth in the Court's prior decision, *Pereira v. Dow Chemical Co. (In re Trace Int'l Holdings, Inc.)*, 287 B.R. 98 (Bankr. S.D.N.Y.2002)("*Trace I*"), familiarity with which is assumed. In brief, Dow purchased Series A Preferred Stock (the "Preferred Stock") from Trace in 1992.[1]

---

1. Dow actually made a loan to BSI Acquisitions Corp., a special purpose entity, which used the loan proceeds to buy the Preferred Stock from Trace. In *Trace I*, I concluded that

Trace was obligated to pay dividends when lawfully able to do so, and if Trace redeemed the Preferred Stock, it was required to pay accrued dividends at that time. *Id.* at 110. According to the trustee, Trace paid dividends aggregating $3,575,150.00 to Dow between January 1, 1995 and the petition date, July 21, 1999. This sum included two transfers aggregating $367,325.00, made within one year of the petition date.

Following the conversion of the case from chapter 11 to chapter 7, the trustee commenced this adversary proceeding to recover those payments as actual or constructive fraudulent transfers under bankruptcy, New York and Delaware law. The trustee contends that the transfers were dividend payments made by Trace at a time when it was insolvent. The trustee had also commenced an action against Trace's former officers and directors in the District Court. That action was assigned to Judge Sweet. To the extent relevant to these proceedings, the trustee contended in the District Court that the directors had violated Delaware law by authorizing the payment of the Dow dividends at a time when Trace was insolvent.

## A. The Trustee's Insolvency Analysis

The trustee proposed to prove Trace's insolvency at the relevant times (1995–1998) through the expert report and testimony of Thomas M. Blake of Ernst & Young, LLC.[2] To compute Trace's solvency, Blake relied on two methods: the fair market balance sheet method and the cash flow and capital adequacy method.[3] According to his Report, the first approach "calculates the fair enterprise value of a company's assets and liabilities, including contingent liabilities on a going concern basis. A company is insolvent if its liabilities exceed its enterprise value assets on a fair market value basis." (*Report* 4.)

The process required Blake to make adjustments to Trace's non-GAAP balance sheet "to present each asset and liability on a fair market value basis." (*Report* 6.) One of the adjustments involved Trace's obligation to redeem the Preferred Stock. For the purposes of his analysis, Blake characterized the redemption obligation as a "cash obligation," and treated it just like Trace's other liabilities. (*Report* 14.) Blake concluded that "Trace was insolvent at various points in time from the fourth quarter of 1995 through the fourth quarter of 1998 on a fair market value balance sheet basis." (*Report* 5.)

The cash flow and capital adequacy method of valuation "measures a company's ability to pay its debts into the future .... [and] a company is insolvent if it cannot generate and/or obtain enough cash to pay for its projected obligations and fund its business requirements for working capital and capital expenditures with a reasonable cushion to cover the variability of its business needs over time." (*Report* 4.) Blake treated Trace's obligation to pay the Preferred Stock dividends (as well as the Convertible Preferred dividends) as a component of cash outflow, the same treatment afforded to Trace's corporate and interest expenses. (*Report* 16–17.) Blake concluded that Trace was insolvent under the cash flow and capital adequacy method

---

BSI was a mere conduit of the transfers under attack. This opinion will ignore BSI and discuss the transaction as if it were directly between Dow and Trace.

**2.** Blake is the trustee's expert in this adversary proceeding too.

**3.** A copy of Blake's Expert Report (the *"Report"*), dated Jan. 31, 2002, is annexed as exhibit 2 to the *Declaration of Eugene P. Cimini in Opposition to Defendant The Dow Chemical Company's Motion Seeking Summary Judgment,* dated Aug. 25, 2003.

at all times during the four years under review. (*Report* 5.)

## B. The First Motion For Summary Judgment

Prior to the trial in the District Court, Dow filed a motion for summary judgment in this adversary proceeding. Dow argued, *inter alia,* that the trustee could not contend that the Preferred Stock dividend obligation was a liability for valuation purposes, and simultaneously maintain that it was not an "antecedent debt." He should, therefore, be estopped or precluded from recovering the transfers. I acknowledged the apparent inconsistency, *see Trace I,* 287 B.R. at 110, but concluded that dismissal on this basis was premature:

> Nevertheless, the trustee should not be prevented, at this point, from contending that the payments to Dow were dividends. First, Dow has not pointed to any mandatory authority that forecloses the trustee's position. Second, Dow has conceded that judicial estoppel does not apply because no court has adopted the trustee's position that the Preferred Stock obligations are liabilities for valuation purposes. [citations omitted.] Dow's argument ignores the limitations on judicial estoppel, yet garners precisely the same benefits that the doctrine would afford. Third, the trustee may change his position, or in Dow's view, adopt a more consistent position at trial.

*Trace I,* 287 B.R. at 111. In the end, I granted the motion to the extent of dismissing the claims based on actual fraud and on Delaware law, and denied the balance of the motion. *Id.* at 112.

## C. Motion For Reargument

Prompted by the completion of the District Court trial, Dow subsequently moved for reargument, or alternatively, for a stay until the District Court rendered its deci-sion. Dow pointed out in its motion that Blake had testified consistently with his Report, and the Report had been received in evidence. Noting that Blake's trial testimony and the receipt in evidence of his Report were cumulative of what had already been placed before me, I denied the motion for reargument.

I also noted that the trustee had taken the same inconsistent position identified by Dow before the District Court:

> [The trustee's] fifth count is based on the payment of illegal dividends under Delaware law. He has requested specific findings from District Judge Sweet that Trace paid the dividends to the Series A Preferred Stockholders while it was insolvent. [citation omitted.] If the Series A Preferred payments are dividends under the Delaware law prohibiting the payment of dividends by an insolvent company, they are also dividends for fraudulent transfer purposes. *See* 287 B.R. at 108 (payment of a dividend by an insolvent Delaware corporation is unlawful, and may be recovered as a fraudulent transfer). Yet in computing solvency, the trustee treated the dividends as "cash obligations," the same as he has done here. . . . Judge Sweet may address the so-called inconsistency in his post-trial decision.

(*Memorandum Decision Denying Motion For Reargument of the Court's December 31, 2002 Memorandum Decision,* dated Feb. 13, 2003, at 4–6 (Doc. # 43)). Accordingly, I granted a stay pending Judge Sweet's determination.

## D. The District Court Decision

The trustee won an overwhelming victory in the District Court. In a comprehensive opinion, entitled *Pereira v. Cogan,* 294 B.R. 449 (S.D.N.Y.2003)("*Trace II* "), Judge Sweet made several findings and

conclusions germane to the pending motion:

1. With some immaterial exceptions, he accepted Blake's adjustment to Trace's balance sheet based on the Preferred Stock redemption obligation, *see id.* at 509, and hence, agreed that it was appropriate to treat that obligation as a liability for the purpose of computing insolvency.

2. Although Judge Sweet did not expressly address the treatment of the Preferred Stock dividend obligation as an expense under the cash flow and capital adequacy method, he again adopted Blake's analysis with some immaterial modifications. *See id.* at 510–11.

3. Based on Blake's analysis, as modified by the District Court, Trace was "either insolvent or in the zone or vicinity of insolvency for the entire period of 1995 through Trace's filing of bankruptcy in 1999, except for the fourth quarter of 1996." *Id.* at 512.

4. With the exception of the fourth quarter of 1996, all of the dividend payments, including those paid to Dow, "were illegal as they were declared when Trace was insolvent." *Id.* at 540.

5. Accordingly, the Director–Defendants were adjudged liable for the payment of illegal dividends in the amount of $4,309,823.00. *Id.* at 550.

After Judge Sweet issued the decision in *Trace II,* Dow made this second motion for summary judgment. Dow contends that the doctrine of judicial estoppel now applies to bar the trustee from asserting that the Preferred Stock dividends were not "antecedent debts." [4]

## DISCUSSION

 Fraudulent transfer law permits the recovery of transfers that unfairly diminish a debtor's estate. 1 GARRARD GLENN, FRAUDULENT CONVEYANCES AND PREFERENCES § 275, at 471 (rev. ed. 1940)("GLENN"). The party asserting a constructive fraudulent transfer must prove three elements: (1) a transfer of the debtor's property, (2) while the debtor was insolvent or which rendered the debtor insolvent [5] (3) for less than reasonably equivalent value (under bankruptcy law) or fair consideration (under New York law). *Trace I,* 287 B.R. at 107. Past consideration is good consideration. An "antecedent debt" satisfies the requirement of fair consideration and reasonably equivalent value, and putting aside transfers to insiders, the payment of an existing liability is not fraudulent. *Atlanta Shipping Corp. v. Chemical Bank,* 818 F.2d 240, 249 (2d Cir.1987)("In general, repayment of an antecedent debt constitutes fair consideration unless the transferee is an officer, director or major shareholder of the transferor")(addressing New York law).

 To be sure, the payment of an antecedent debt, or a preference, reduces the assets available to other creditors. Nevertheless, "[i]f there is in our law one point which is more ungrudgingly accepted than others, it is that the preferential transfer does not constitute a fraudulent conveyance." 1 GLENN § 289, at 488. The reason for the rule is a practical one. A single

---

**4.** Dow also argues that the decision in *Trace II* judicially estops the trustee from disputing the parties' intention that Trace would redeem the Preferred Stock. In light of the decision in favor of Dow, it is not necessary to address that question.

**5.** The fraudulent transfer laws include other financial tests, but insolvency is the test relevant to this motion.

creditor can bring a fraudulent transfer action. "To allow such a creditor, thus acting in his own interest, to set aside a preferential transfer would simply amount to substituting him as the party preferred." *Id.* § 289, at 489; *accord Irving Trust Co. v. Kaminsky,* 19 F.Supp. 816, 818 (S.D.N.Y.1937); *Sawyer v. Levy,* 162 Mass. 190, 38 N.E. 365, 365 (1894).[6]

■■■ While one can quarrel with the conclusion that Trace paid a debt rather than a dividend to Dow, *see Trace I,* 287 B.R. at 109–10, the trustee is judicially estopped from challenging this position. Judicial estoppel is designed to keep litigants from playing "fast and loose" with the courts, by preventing a party who benefits from a position in an earlier litigation from subsequently adopting a contrary position. *Young v. United States Dep't of Justice,* 882 F.2d 633, 639 (2d Cir.1989), *cert. denied,* 493 U.S. 1072, 110 S.Ct. 1116, 107 L.Ed.2d 1023 (1990). The party invoking judicial estoppel must demonstrate that (1) his adversary argued an inconsistent position in an earlier proceeding, and (2) the first court adopted the inconsistent position in some manner. *Bridgeway Corp. v. Citibank,* 201 F.3d 134, 141 (2d Cir.2000); *Mitchell v. Washingtonville Cent. Sch. Dist.,* 190 F.3d 1, 3 (2d Cir.1999); *Bates v. Long Island R.R. Co.,* 997 F.2d 1028, 1038 (2d Cir.), *cert. denied,* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993).

Here, Dow met its burden. The characterization of the Preferred Stock obligations is relevant to two of the elements that the trustee must prove—insolvency and fair consideration (or reasonably equivalent value). If the obligation is treated as a debt to reduce the debtor's value and increase the likelihood of insolvency, it is fair and appropriate to treat it as a debt in deciding whether its satisfaction represented a fair exchange for value.

In *Trace II,* the trustee successfully argued that the Preferred Stock redemption obligation should be treated as a liability for the purpose of determining Trace's insolvency under the balance sheet test. As noted, the redemption obligation included the obligation to pay accrued dividends. In addition, the trustee successfully argued that the dividend obligation was a cash outflow, and should be treated as an expense under the cash flow and capital adequacy test. Obviously, the payment of an expense reduces a liability. Although the trustee has consciously avoided referring to either the redemption or dividend obligation as a liability, that is the precise position on which he prevailed when the District Court adopted Blake's analysis, with immaterial changes, and concluded that Trace was insolvent in every quarter of the period 1995 through 1998, except for the last quarter of 1996.

The trustee is now taking an inconsistent position. He wants to contend that the dividend obligation was not an "antecedent debt." Having successfully characterized the dividend obligation as an expense, and hence, a liability, for valuation purposes, he is stuck with that characterization.[7] He cannot argue in this forum that the payment of the dividend obligation did not satisfy an "antecedent debt."

---

**6.** Other rationales have been proposed. First, an antecedent debt is considered as valuable consideration under contract law. *See* John C, McCoid, *Constructively Fraudulent Conveyances: Transfers for Inadequate Consideration,* 62 Texas L.Rev. 639, 663 n. 118 (1983). Second, although a preference diminishes the debtor's estate, it also reduces the liabilities, *pro tanto,* and hence, the competition for the diminished assets. CHARLES JORDAN TABB, THE LAW OF BANKRUPTCY § 6:32, at 429 (1997).

**7.** He also makes the same argument in support of his insolvency claim in this litigation.

It is true, as the trustee observes, that he successfully maintained both inconsistent positions in the District Court. He prevailed on his theory that the Preferred Stock obligations should be treated as debts in computing insolvency, but still recovered a judgment against the directors based on the payment of unlawful Preferred Stock dividends. The parties to the District Court did not, however, raise the issue, and Judge Sweet did not decide it. Here, Dow has raised it, and for the reasons stated above, is entitled to summary judgment dismissing the trustee's amended complaint.

Settle order on notice.