In re APPLIEDTHEORY CORP., et al., Debtors.

Yann Geron, as Chapter 11 Trustee of the Estates of AppliedTheory Corp., et al., Plaintiff,

v.

Palladin Overseas Fund, Ltd., Halifax Fund, L.P., Palladin Partners I, L.P., DeAm Convertible Arbitrage Fund, Ltd., Lancer Securities (Cayman), Ltd., Elliott International, L.P., and Elliott Associates, L.P., Defendants.

Bankruptcy Nos. 02–11868 (REG), 02–11869(REG), 02–11870(REG), 02–11871(REG), 02–11872(REG), 02–11873(REG), 02–11874(REG). Adversary No. 04–03763 (REG).

United States Bankruptcy Court, S.D. New York.

March 30, 2005.

Fox RothsChild, LLP, by Yann Geron, Esq. (argued), New York, NY, General Counsel for the Chapter 11 Trustee.

Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., by Lawrence S. Bader, Esq. (argued), Benjamin S. Fischer, Esq., New York, NY, Special Litigation Counsel for the Chapter 11 Trustee.

Duval & Stachenfeld LLP, by Kirk L. Brett, Esq. (argued), Mary P. Miras, Esq., New York, NY, Counsel for Palladin Overseas Fund, Ltd., Halifax Fund, L.P., Palladin Partners I, L.P., DeAm Convertible Arbitrage Fund, Ltd., and Lancer Securities (Cayman), Ltd.

Kleinberg, Kaplan, Wolff & Cohen, P.C., by David Parker, Esq., New York, NY, Counsel for Elliott International, L.P. and Elliott Associates, L.P.

Arent Fox PLLC, by Andrew I. Silfen, Esq. (argued), Schuyler G. Carroll, Esq., Michael S. Cryan, Esq., New York, NY, Counsel for the Official Committee of Unsecured Creditors.

*Decision on Motion for Summary Judgment*

ROBERT E. GERBER, Bankruptcy Judge.

In this adversary proceeding under the umbrella of a case under chapter 11 of the Bankruptcy Code, plaintiff Yann Geron, the Chapter 11 Trustee, seeks to void, as fraudulent conveyances, security interests obtained by defendants Palladin Overseas Fund, Ltd.; Halifax Fund, L.P.; Palladin Partners I, L.P.; DeAm Convertible Arbitrage Fund, Ltd.; Lancer Securities (Cayman), Ltd.; Elliott International, L.P.; and Elliot Associates, L.P. (hereafter referred to as the "Lenders" or the "Defendants") when the debtor's prior indebtedness to the Lenders was restructured. The Lenders moved under Fed.R.Civ.P. 12(b)(6) to dismiss the complaint.

After oral argument on the motion, it appeared to the Court that the controversy could not be decided under Rule 12(b)(6), but could be determined with a minimum of incremental expense if facts relating to the circumstances under which the antecedent debt came into being were clarified. Thus, at the Court's suggestion, and without opposition from either side, the litigants entered into a stipulation with respect to those facts (the "Stipulation"), and the Lenders' motion to dismiss was converted into a motion for summary judgment.

The Court is now in a position to decide the controversy, and grants the Defendants' motion for summary judgment. The following are the bases for this determination.

*Facts*

On June 5, 2000, the Lenders lent the debtor $30 million on an unsecured basis by buying $30 million in convertible debentures that were to mature on June 5, 2003. As confirmed in the Stipulation, the Lenders actually advanced the money. In October 2000, the debtor defaulted by failing to register the shares issuable upon conversion of the debentures. But despite this default, the Lenders opted not to exercise their rights and instead negotiated with the debtor, finally amending the terms of the debentures relating to control provisions and conversion prices on January 9, 2001.

On July 10, 2001, the Lenders and the debtor again agreed to amend the control provisions and conversion prices of the debentures. This time, the Lenders agreed

to make new loans of up to $6 million to the debtor pursuant to a revolving credit agreement, in addition to conceding to changes in the control features and conversion prices of the debentures that benefited the debtor. At this time, in order to secure the debtor's obligations to repay both the old money and the new money— under both the debentures and the revolving credit agreement—the debtor gave a security interest in all of its assets to the Lenders.

## Discussion

### I.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] The moving party bears the initial burden of showing that the undisputed facts entitle it to judgment as a matter of law.[2] Then, after the movant carries this initial burden, the non-moving party must set forth specific facts to show that there are triable issues of fact, and cannot rely on pleadings containing mere allegations or denials.[3] In this connection, it is well settled, of course, that the court should not weigh the evidence or determine the truth of any matter, and must resolve all ambiguities and draw all reasonable inferences against the moving party.[4] A fact is material if it "might affect the outcome of the suit under the governing law."[5] An issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6]

### II.

### A.

The Trustee argues that the granting of the security interest by the debtor to the Lenders in respect of antecedent debt constituted a fraudulent conveyance under section 548(a)(1)(B) of the Bankruptcy Code and sections 273 and 274 of the New York Debtor and Creditor Law. Under these sections, in order for a transfer of a debtor's interest in property or any obligation incurred by the debtor to be considered a fraudulent conveyance and to be avoided, the Trustee must show that the debtor received less than reasonably equivalent value in exchange for such transfer or obligation (using the language of the Bankruptcy Code) or that the conveyance was made without fair consideration (using the language of the New York Debtor and Creditor Law).

Courts typically use these terms interchangeably, and do not usually make a distinction between the standard required for reasonably equivalent value, on the one hand, and fair consideration, on the other.[7] Accordingly, this Court too

1. Fed.R.Civ.P. 56, made applicable to this adversary proceeding by Fed. R. Bankr.P. 7056.

2. *See Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir.1995).

3. Fed.R.Civ.P. 56(e); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Kittay v. Peter D. Leibowits Co., Inc. (In re Duke & Benedict, Inc.)*, 265 B.R. 524, 529 (Bankr.S.D.N.Y.2001) (Hardin, J.).

4. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Virgin Atlantic Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 262 (2d Cir.2001).

5. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

6. *Id.*

7. *See Pereira v. Dow Chem. Co. (In re Trace Int'l Holdings, Inc.)*, 301 B.R. 801, 805–06 (Bankr.S.D.N.Y.2003) (Bernstein, C.J.) (*"Trace II"*). *Trace II* follows an earlier deci-

will use these terms interchangeably for the purposes of this decision, and will treat the Trustee's claims under section 548(a)(1)(B) of the Code and under sections 273 and 274 of the New York Debtor and Creditor Law collectively.

## B.

 Here the debtor granted the security interest to the Lenders to secure antecedent debt, which arose from $30 million in funds that the Lenders had advanced to the debtor in the form of unsecured debentures. The security interest did not provide the Lenders with a right to receive anything more than the amount of the money they had provided, and the debtor's liabilities did not increase due to the security interest. The security interest was granted in respect of an antecedent debt—debt that arose by reason of the Lenders having provided the debtor with actual cash in the amount of the debt.

Thus, as this Court held on weaker facts (a guaranty situation) in its earlier decision in *In re Kaplan Breslaw Ash*[8]—and later authority in this district[9] and in the Court's sister district[10] likewise holds—this Court must here hold, and does hold, that the debtor received reasonably equivalent value in exchange for its granting the security interest.

In *Kaplan Breslaw Ash*, the lender made a loan of funds to an affiliate of the debtor, and the debtor guarantied the affiliate's obligation to repay the lender. The three parties involved in this first transaction—the debtor, the debtor's affiliate, and the lender—then entered into another transaction several years later. In that second transaction, the debtor executed a mortgage in favor of the lender to secure its guaranty obligation (which guarantied the affiliate's obligation to repay the lender in the first transaction), and to secure its obligation to repay new funds advanced by the lender to the debtor. When the debtor filed for bankruptcy and the lender moved for relief from the stay in order to foreclose on a warehouse owned by the debtor, the debtor objected, arguing that the lender's security interest in the warehouse was a fraudulent conveyance and could be avoided because the debtor did not receive proceeds from the lender's loans.

Using section 548(d)(2)(A), which defines "value" for the purposes of section 548 as "property, or satisfaction or securing of a present or antecedent debt of the debtor," this Court concluded that under the Bankruptcy Code, the debtor received value in exchange for delivering property that secured a present or antecedent debt.[11] This Court there held that when a debtor grants a security interest to a lender in

sion dealing with this same subject matter, in part. *See Pereira v. Dow Chem. Co. (In re Trace Int'l Holdings, Inc.),* 287 B.R. 98, 110 (Bankr.S.D.N.Y.2002) (Bernstein, C.J.) (*"Trace I"*).

8. *In re Kaplan Breslaw Ash, LLC,* 264 B.R. 309 (Bankr.S.D.N.Y.2001) (Gerber, J.) (*"Kaplan Breslaw Ash"*).

9. *See Trace II,* 301 B.R. at 805 (quoted below); *Trace I,* 287 B.R. at 110 ("To prevail on his constructive fraudulent transfer claims, the [T]rustee must show that [the debtor] was insolvent at the time of each transfer, and did not receive reasonably equivalent value (or

fair consideration). Payment of an antecedent debt would constitute sufficient consideration, and defeat the [T]rustee's claims."); *Cuevas v. Hudson United Bank (In re M. Silverman Laces, Inc.),* 2002 WL 31412465 (S.D.N.Y. Oct.24, 2002) (Gonzalez, J.) (*"M. Silverman Laces"*).

10. *See Sharp Int'l Corp. v. State St. Bank and Trust Co. (In re Sharp Int'l Corp.),* 302 B.R. 760, 779–80 (E.D.N.Y.2003) (Trager, J.) (*"Sharp International"*).

11. *See Kaplan Breslaw Ash,* 264 B.R. at 328–29.

respect of antecedent debt, the debtor must *necessarily* receive reasonably equivalent value or fair consideration in exchange. This Court also noted that the value of the collateral was not relevant in determining whether the debtor received reasonably equivalent value in exchange for its granting the security interest, because the rights of a secured creditor in collateral are always restricted by the amount of the debt.[12] This Court also pointed out that while the debtor's granting the security interest to the lender may have been deemed to be a preference, it could not be considered a fraudulent conveyance—two concepts that are quite different and must be distinguished.[13]

Similarly, in *Trace II*, Judge Bernstein held that a preferential transfer that satisfied an antecedent debt could not be deemed to be a fraudulent conveyance because the existence of the antecedent debt satisfied the requirement of reasonably equivalent value or fair consideration. In so holding, Judge Bernstein stated:

> Past consideration is good consideration. An antecedent debt satisfies the requirement of fair consideration and reasonably equivalent value, and putting aside transfers to insiders, the payment of an existing liability is not fraudulent. To be sure, the payment of an antecedent debt, or a preference, reduces the assets available to other creditors. Nevertheless, if there is in our law one point which is more ungrudgingly accepted

than others, it is that the preferential transfer does not constitute a fraudulent conveyance.[14]

Additionally, in *M. Silverman Laces*, Judge Gonzalez first held (at the bankruptcy court level), and Judge Chin (at the district court level) also held, that the debtor received reasonably equivalent value as a matter of law when its antecedent debt was extended and collateralized. In *M. Silverman Laces*, the lender made several loans to the debtor that were partially secured. When the debtor defaulted, the lender agreed to forbear on what it was owed and instead extended new loans to the debtor. In exchange, the debtor granted to the lender a security interest in its inventory to secure all of its obligations, both old and new. The debtor then filed for bankruptcy and the Trustee brought a complaint, alleging preference and fraudulent conveyance claims. The lender moved for summary judgment, which Judge Gonzalez granted, holding that, as a matter of law, the debtor had received reasonably equivalent value in exchange for its granting the security interest to the lender. Judge Chin then affirmed this decision:

> Judge Gonzalez correctly concluded that Silverman had received reasonably equivalent value as a matter of law. First, Silverman received "value", for the Code specifically provides that the "securing of a present or antecedent debt of the debtor" is "value" for pur-

---

12. *Id.* at 330 n. 71.

13. *Id.* at 330.

14. 301 B.R. at 805 (internal citations and quotations omitted). *See also Sharp International, supra* note 10, 302 B.R. at 780 ("In a sense, all preferences prejudice the unfavored creditors, inasmuch as the debtor's remaining assets are by definition insufficient to fully cover the debts owed to them. However, the correction of this unfairness is not the aim of fraudulent conveyance law."); Alan N. Resnick, Bankruptcy Law Manual § 8:34 (5th ed. 2005) (" 'Value' may consist of property or the satisfaction or securing of either a present or an antecedent debt. Thus, an insolvent debtor receives value by paying an old obligation. For this reason, making a preference in good faith is not a fraudulent conveyance because value is exchanged by the cancellation of the antecedent debt.").

poses of 548.[15]

Earlier authority in this district holds likewise.[16]

In opposition to the Lenders, the Trustee points to decisions by the bankruptcy court and Bankruptcy Appellate Panel of the 10th Circuit in *Stillwater Nat'l Bank and Trust Co. v. Kirtley (In re Solomon)*.[17] Those two cases hold that when a debtor grants a lien in respect of antecedent debt, it does not necessarily mean that the debtor received reasonably equivalent value or fair consideration in exchange. In *Solomon*, the debtors were both the sole shareholders of a close corporation, named Sabre, as well as the grantors of a revocable living trust, which owned some commercial real estate that was leased to Sabre. The debtors and the trust guarantied a loan made by a bank to Sabre, and the loan was also secured by Sabre's assets. After Sabre underwent financial troubles, the parties restructured their transaction, which resulted in Sabre executing a new $350,000 note credited against some of the principal and interest due under the previous loan by the bank. The debtors and the trust guarantied the new note, and gave the bank a mortgage on the trust's commercial real estate as security of their guaranty of the new note. When the debtors filed for bankruptcy and the Chapter 7 Trustee attempted to avoid the mortgage as a fraudulent conveyance, the bankruptcy court for the Northern District of Oklahoma held that "the proper inquiry requires consideration of the effect of the conveyance upon the other creditors of the debtor." [18] The court continued, holding that because the "effect of the [mortgage] was to improve the collateral position of the [b]ank at the expense of the [d]ebtors' unsecured creditors," the debtors did not receive reasonably equivalent value.[19] The 10th Circuit BAP affirmed this decision, questioning "the soundness of applying the per se rule in those cases where the debtor received no loan proceeds from the antecedent debt and only provides the security for a third party's antecedent debt." [20]

But the case here is different from *Solomon*, and as this Court noted in oral argument, this difference is crucial. In *Solomon*, the antecedent debt was the debtors' guaranty, and the debtors did not receive any loan proceeds directly. The debtor *did* receive the loan proceeds here. This case is the exact kind of case that the 10th Circuit BAP distinguished.

**15.** 2002 WL 31412465, at *6.

**16.** *See Pereira v. Lady Hope Dress Co., Inc. (In re 550 Les Mouches Fashions, Ltd.)*, 24 B.R. 509, 516 (Bankr.S.D.N.Y.1982) (where, long before *Kaplan Breslaw Ash*, Judge Beatty held that securing an antecedent debt constitutes "value" for the debtor).

As is apparent from the above, this Court's determination is consistent with the uniform authority in this district. It is also consistent with the better reasoned cases elsewhere. *See, e.g., Ris v. Society for Savings (In re Countdown of Connecticut, Inc.)*, 115 B.R. 18, 21 (Bankr.D.Conn.1990) (holding that an antecedent debt constitutes value for the granting of a security interest, and citing *550 Les Mouches Fashions*); *Abraham v. Central Trust Co. (In re Abraham)*, 33 B.R. 963, 967 (Bankr.M.D.Fla. 1983) (holding that a pre-existing or antecedent debt may constitute sufficient consideration to support a mortgage); *Anand v. Nat'l Republic Bank of Chicago (In re Anand)*, 210 B.R. 456, 458–59 (Bankr. N.D.Ill.1997) (Barliant, J.), *aff'd on different grounds*, 239 B.R. 511, 517–18 (N.D.Ill. 1999) (Pallmeyer, J.).

**17.** 300 B.R. 57 (Bankr.N.D.Okla.2003) (*"Solomon I"*), *aff'd*, 299 B.R. 626 (10th Cir. BAP 2003) (*"Solomon II"*).

**18.** *Solomon I*, 300 B.R. at 65.

**19.** *Id.* at 67–68.

**20.** *Solomon II*, 299 B.R. at 637.

844

*Kaplan Breslaw Ash* was a guaranty case, and if the 10th Circuit law, as enunciated in *Solomon*, were the law in this district, *Kaplan Breslaw Ash* might be decided differently. But here the antecedent debt was the result of *money actually borrowed and received.* Especially in light of the decisions in this district after *Kaplan Breslaw Ash*, and the stated distinction made by the 10th Circuit BAP in *Solomon*, this Court continues to believe, and holds, that the granting of a security interest in respect of antecedent debt constitutes reasonably equivalent value or fair consideration, at least in those cases where the antecedent debt is borrowed money that was actually received—as opposed to a mere guaranty. The Court does not have to decide here if antecedent debt arising from a guaranty—as was the case in *Solomon*—would give rise to a different result, and would constitute a fraudulent conveyance because of a lack of reasonably equivalent value. That determination can be made on another day.

*Conclusion*

For the foregoing reasons, the Court concludes, as a matter of law, that the debtor's receipt of $30 million in borrowed money loan proceeds constituted reasonably equivalent value and fair consideration in exchange for its granting a security interest to the Lenders, and the granting of this security interest was not a fraudulent conveyance. The Lenders' motion for summary judgment is thus granted. The Lenders are to settle an order in accordance with the foregoing at their earliest reasonable convenience.