In re BROWNING TUFTERS, INC., and Tom P. Browning, Debtors.

FIRST NATIONAL BANK OF DALTON, Plaintiff,

v.

BROWNING TUFTERS, INC. and Tom P. Browning, Defendants.

Nos. B79–14R and 15R.

United States Bankruptcy Court, N. D. Georgia, Rome Division.

April 3, 1980.

---

10. S.Rep. *supra* at 13.

488

Hubert C. Broadfoot, II, Swift, Currie, McGhee & Hiers, Atlanta, Ga., for defendants.

Dudley B. Magruder, Jr., Rogers, Magruder & Hoyt, Rome, Ga., for plaintiff.

## ORDER

HUGH ROBINSON, Bankruptcy Judge.

This case came before the Court on "Motion for Summary Judgment as to Defendant's Counterclaims" filed by Plaintiff on August 14, 1979. The Court, having considered the briefs and other documents submitted by the parties regarding this motion and the pleadings on file, makes the following decision:

## FINDINGS OF FACT

1. On March 14, 1978 the First National Bank of Dalton (hereinafter referred to as "Plaintiff") completed a loan transaction with Browning Tufters Co., Inc. (hereinafter referred to as "Debtor") whereby

Plaintiff loaned Debtor $550,000. The purpose of the loan was to consolidate several then existing obligations of Debtor owing to various creditors.

2. Said loan was guaranteed in part by the United States Small Business Administration (hereinafter referred to as the "S.B. A.").

3. The loan was secured by Debtor's business furniture, fixtures, machinery and equipment. Plaintiff perfected its security interest in the aforementioned property by filing a financing statement on March 16, 1978.

4. The S.B.A. guaranty was secured by real estate owned by Tommy Paul Browning, the President and sole shareholder of Debtor.

5. From the loan proceeds the sum of $377,184.54 was paid to Tuftco Sales Corp. as payment of an existing debt; $98,525.17 was paid to C.I.T. Corp. as payment of an existing debt and $74,290.29 was retained by Debtor as working capital.

6. At the time this loan was made Debtor was indebted to Plaintiff on a promissory note dated February 27, 1978. Plaintiff extended this note for a period of 51 days from February 27, 1978.

7. Plaintiff alleges that Joseph Sheppard, an officer of Plaintiff, received assurances from Mr. Browning that this debt would be paid from other corporate and personal funds and would be paid on request. Mr. Browning denies making such representations.

8. On March 29, 1978 Debtor made a payment of approximately $73,000.00 to Plaintiff which was accepted by Plaintiff as payment in full of the February 27, 1978 note.

9. Plaintiff alleges that said payment was voluntarily made. Debtor contends that Plaintiff coerced payment of this debt by refusing to honor checks drawn by Debtor after March 14, 1978 and prior to March 29, 1978 on Debtor's account with Plaintiff. Debtor further contends that the alleged refusal to honor the aforementioned checks occurred after the proceeds of the loan of March 14, 1978 had been deposited in Plaintiff.

10. Debtor filed a petition under Chapter XI of the Bankruptcy Act on January 10, 1979.

11. On April 5, 1979 Plaintiff filed a "Reclamation Petition."

12. Debtor filed an "Answer and Counterclaim" on May 8, 1979. Count I of the counterclaim alleges that the obligation incurred by Debtor on the Note and Security Agreement executed March 14, 1978 constitutes a fraudulent transfer under Section 67(d)(2)(a), (b) or (c) of the Bankruptcy Act. Count II of the counterclaim alleges that as a result of Plaintiff's demand for payment of the February 27, 1978 promissory note on March 29, 1978, Debtor was unable to pay its debts as they matured and was forced to sell some of its property at distress prices in order to pay its debts and to generate working capital.

13. On August 14, 1979 Plaintiff filed a "Motion for Summary Judgment as to Defendant's Counterclaims."

## APPLICABLE LAW

It is Debtor's position that the obligation incurred by Debtor by the execution of the promissory note and security agreement on March 14, 1978 is a fraudulent transfer within the meaning of Section 67(d)(2)(a), (b) or (c) of the Bankruptcy Act, 11 U.S.C. § 107(a), (b), (c), in that it occurred within one year prior to the filing of the bankruptcy petition: (1) without fair consideration and Debtor was thereby rendered insolvent; or (2) without fair consideration by Debtor while engaged in business for which the property remaining in its hands was an unreasonably small capital; or (3) without fair consideration by Debtor who intended to incur or believed that it would incur debts beyond its ability to pay as they matured.

If fair consideration is given for property transferred by a debtor within one year prior to the filing of a bankruptcy petition there is no fraudulent transfer within the meaning of Section 67(d)(2)(a),

(b) or (c) of the Bankruptcy Act. *In re King Porter*, 446 F.2d 722 (5th Cir. 1971).

■ The presence or absence of fair consideration is a question of fact. *De Aragon v. Chase Manhattan Bank*, 457 F.2d 263 (1st Cir. 1972); *Mayo v. Pioneer Bank & Trust Company*, 270 F.2d 823 (5th Cir. 1959), cert. denied, 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 877 (1960). Two things must be present in order to make a finding of fair consideration: good faith on the part of the transferee and an exchange of property that is a fair equivalent of the property transferred by the debtor. Section 67(d)(1)(e) of the Bankruptcy Act, 11 U.S.C. § 107(d)(1)(e); *In re Southern Land Title Corp.*, 474 F.2d 1033 (5th Cir. 1973).

■ A finding of good faith on the part of the transferee depends on whether the transaction in question carries the earmarks of an arms-length bargain. *Bullard v. Aluminum Company of America*, 468 F.2d 11 (7th Cir. 1972). The record in the case indicates that Plaintiff had engaged in several loan transactions with Debtor before entering into the loan agreement of March 14, 1978. There is no evidence that Plaintiff acted in bad faith with regard to this loan transaction, and the loan agreement of March 14, 1978, appears to be the result of an arms length bargain.

The Court must now examine this transaction to determine if the $550,000.00 loaned to debtor was the fair equivalent of the property in which Plaintiff was given a security interest. In making this determination the Court adopts the test formulated in *Inland Security Company, Inc. v. Estate of Kirshner*, 382 F.Supp. 338, 347 (W.D.Mo. 1974). There the Court said:

> "When property is transferred or an obligation incurred for the purposes of security, it is only necessary that its value be not disproportionately large as compared with the amount of the advance or the secured debt."

The record in this case contains no evidence of the value of the business furniture, fixtures, machinery and equipment which secure the loan of March 14, 1978. Therefore this Court cannot reach a conclusion as to whether the value of the collateral is disproportionately large as compared to the $550,000.00 advanced to Debtor. The value of these items of collateral is an issue of material fact with regard to whether the $550,000.00 advance was a fair equivalent of the collateral.

Count II of Debtor's counterclaim involves the payment of approximately $73,-000.00 to Plaintiff by Debtor on March 29, 1978. On this date the debt was not yet due and owing. Debtor alleges that as a direct and proximate result of Plaintiff's demand for payment, Debtor was unable to pay its debts as they matured and was forced to sell some of its property at distress prices in order to pay its debts and to generate working capital.

■ Debtor has neither specified the legal theory of recovery on which it relies in asserting Count II of its counterclaim nor has Debtor requested relief based expressly on this counterclaim. In this situation the Court cannot conclude that there are no genuine issues of material fact regarding Count II of debtor's counterclaim.

Plaintiff contends that a counterclaim cannot be filed in this dispute. In making this assertion Plaintiff relies on §§ 361 and 362(d) of the Bankruptcy Code. As this case was filed under the Bankruptcy Act, these sections of the Bankruptcy Code are not applicable to this case.

■ Plaintiff's assertion appears to be a challenge to the jurisdiction of this Court to hear Debtor's counterclaims. An adverse party is deemed to have consented to the summary jurisdiction of the bankruptcy court if he does not interpose an objection thereto by answer or motion filed before the expiration of the time prescribed by law or rule of court for the filing of an answer to the petition, motion or other pleading to which he is adverse. Section 2(a)(7) of the Bankruptcy Act, 11 U.S.C. § 11(a)(7) Rule 915 of the Bankruptcy Rules. Plaintiff raised no objection to jurisdiction in its Motion for Summary Judgment, therefore the present objection is not timely made.

Consent to jurisdiction may also be inferred from actions of an adverse party that constitute a clear manifestation that he is submitting a particular issue to the summary jurisdiction of the bankruptcy court. *Gill v. Phillips*, 415 F.2d 511 (5th Cir. 1969). By making a motion for summary judgment Plaintiff has submitted the issues presented by Debtor's counterclaims to the jurisdiction of this Court.

A court may grant a motion for summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56 of the Federal Rules of Civil Procedure.

## CONCLUSIONS OF LAW

(1) The loan transaction of March 14, 1978 between Debtor and Plaintiff bears the earmarks of an arms-length bargain. Therefore the Court concludes that Plaintiff acted in good faith in this transaction.

(2) The value of the collateral securing the loan made on March 14, 1978 is an issue of fact in this case. This issue of fact is material to the determination of whether the $550,000.00 loaned to Debtor was the fair equivalent of the collateral.

(3) As the Debtor did not state the legal ground of recovery relied on in asserting Count II of its counterclaims, this Court cannot conclude as a matter of law that there are no genuine issues of material fact with regard to Count II of the counterclaims.

(4) Plaintiff has consented to the jurisdiction of this Court by failing to make a timely objection to jurisdiction and by submitting the issues presented by Debtor's counterclaims to this Court for resolution. It is therefore

ORDERED that Plaintiff's Motion for Summary Judgment be and same is hereby denied.