In re Dinesh S. ANAND and Gyan D. Anand, Debtors.

Dinesh S. ANAND and Gyan D. Anand, Plaintiffs,

v.

NATIONAL REPUBLIC BANK OF CHICAGO, Harris Bank Hinsdale, Trustee under Trust Agreement dated August 18, 1987, known as Trust L–1679, Defendants.

Bankruptcy No. 93 B 00150.
Adversary No. 93 A 01079.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

May 21, 1997.

Gerald M. Sheridan, Jr., Christina Lass, Sheridan & Associates, P.C., Wheaton, IL, for Plaintiffs.

Ariel Weissberg, Herman Marino, Richard N. Steiner, Weissberg and Associates, Ltd., Chicago, IL, for National Republic Bank.

United States Trustee for the Northern District of Illinois, Chicago, IL.

## MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

The Debtor sued to avoid transfers of his property to the National Republic Bank on preference and fraudulent transfer grounds. This Court entered judgment for the bank and the district court affirmed, except that it remanded the proceeding for specific findings about one claim. With respect to that claim, this Court held, without fully explaining its reasoning, that the Debtor received "reasonably equivalent value" because the challenged transfer was made to secure an antecedent debt. The district court directed this Court "to make its determinations more explicit." This opinion is this Court's compliance with that direction. It will explain that a transfer to secure an antecedent debt will always be for reasonably equivalent value.

## BACKGROUND

This adversary proceeding arose from a series of transactions between one of the joint Debtors, Dinesh Anand, and National Republic Bank of Chicago culminating in Anand's July 31, 1992 assignment of his 60% interest in a land trust holding title to property in Mokena, Illinois as collateral for about $260,000 in debts he then owed the

bank.[1]   Anand filed for protection under Chapter 11 of the Bankruptcy Code in January 1993.   He thereafter filed this adversary proceeding to avoid the transfer of his interest in the Mokena property on several grounds.

After a lengthy trial, this court rejected all of Anand's claims.   Anand appealed the decision and a memorandum opinion was issued by the District Court on October 30, 1996.   The District Court affirmed this Court's order except as to the issue of whether the Bank had satisfied the "reasonably equivalent value" requirement of 11 U.S.C. § 548.   The District Court remanded the proceeding, finding as follows:

> Anand next claims that the bankruptcy court erred in determining that he had failed to satisfy the elements of constructive fraud under [11 U.S.C.] § 548.   At the end of trial, the bankruptcy court concluded that Anand had received "reasonably equivalent value" and therefore denied his claims.   Specifically, the court reasoned that since Anand's assignment was made in consideration of an antecedent debt, it satisfied the "reasonably equivalent value" requirement under section 548 of the Bankruptcy Code.
>
> * * * * * *
>
> The bankruptcy court failed to make any explicit findings regarding the "reasonable equivalence" of the exchange.   While the securing of antecedent debt satisfies the "value" requirement, this Court vacates the bankruptcy court's ruling and remands this claim in order to allow for more specific findings as to whether Anand received "reasonably equivalent value."   This court does not mean to suggest that what Anand received could not constitute "reasonably equivalent value"; rather it directs the bankruptcy court to make its determination more explicit.

Detailed descriptions of the facts that led up to the transaction at issue are contained in this Court's findings and conclusions and the District Court's opinion, 1996 WL 596399 (N.D.Ill.).   In summary, on April 29, 1991, the Bank lent Anand $250,000 for working capital in his real estate ventures, secured by a second mortgage on Anand's home.   On January 2, 1992, the Bank made an additional $10,000 loan to Anand.   By July 10, 1992, Anand was in default on the $250,000 note, the $10,000 note and an interim agreement meant to deal with Anand's financial problems.   The loans had come to be virtually unsecured.   Then, on July 31, 1992, Anand executed a collateral assignment of beneficial interest ("CABI") in which he assigned his 60% interest in the Mokena property as collateral for the Bank's loans.

This court previously found that Anand had received reasonably equivalent value in exchange for putting up his share of the Mokena property as collateral for his antecedent debt to the Bank.   Following is the reasoning for that determination.

### DISCUSSION

■   11 U.S.C. § 548 provides, in pertinent part (emphasis supplied):

(a) *The trustee may avoid any transfer of an interest of the debtor in property,* or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, *if the debtor . . .—*

> (2)(A) *received less than a reasonably equivalent value in exchange for such transfer* or obligation;   and

(B)(I) was insolvent on the date that such transfer was made . . . .

The issue here is whether the Debtor got "reasonably equivalent value in exchange for" his transfer of a security interest in the Mokena property to secure the existing debts.   There is no doubt that the Debtor got value.   Section 548(d)(2)(A) defines "value" to include "securing of a present or antecedent debt of the debtor."   But the District Court did not believe this Court had adequately explained why that "value" was "reasonably equivalent."

■   It is obvious that when dealing with the exchange of one asset for another, the court must compare the value of what the

---

**1.**   The exact amount is in dispute, but does not matter.

debtor surrendered with what the debtor received. *In re Bundles,* 856 F.2d 815, 824 (7th Cir.1988). But here the Debtor did not give up all of his interest in the Mokena property; he only gave the bank an interest in that property sufficient to secure payment of his debts. The difference is critical.

A secured creditor does not own the collateral securing a debt; the creditor has no rights in the collateral except as necessary to protect the claim. The debtor continues to own the property; the secured creditor has only the right to force its liquidation for the sole purpose of paying the secured debt. A secured creditor is not entitled to collect more than the amount of the debt from such a liquidation of the collateral. Any collateral value in excess of the debt is available to satisfy other creditors. *Unisys Finance Corp. v. Resolution Trust Corp.,* 979 F.2d 609, 611 (7th Cir.1992). The debtor, notwithstanding the transfer of a security interest, can realize the value of the collateral in excess of the debt by selling the property or borrowing on a junior lien. The value of the property, beyond the amount of the debt, is therefore not lost to the debtor or other creditors as a result of the transfer.

In *In re Southmark Corp.,* 138 B.R. 820, 829 (Bankr.N.D.Tex.1992), for example, the debtor challenged whether it had received "reasonably equivalent value" when it granted a security interest in $45 million worth of stock to a bonding company to secure a $34 million supersedeas bond it needed to stay the execution of a $22 million judgment. The court "dispositively" found that Southmark Corp. was never at risk for more than the cost of resolving its underlying dispute and that its collateral could be liquidated only up to the amount of its obligations to its adversaries in the litigation. 138 B.R. at 829–830.

Nevertheless, there is authority that whether an exchange involving the collateralization of an antecedent debt constitutes the receipt of less than reasonably equivalent value is a question of fact. Under this rule, the value of the collateral is significant to determine whether the debtor received reasonably equivalent value. *In re Countdown of Connecticut, Inc.,* 115 B.R. 18 (Bankr. D.Conn.1990). This court disagrees and

holds that as a matter of law collateralizing an antecedent debt cannot constitute less than reasonably equivalent value regardless of the value of the collateral. This is so, again, because, from the perspective of the debtor, the value of the interest in the collateral transferred to the creditor can never be more than the amount of the debt. The value of the collateral is therefore irrelevant to the ultimate question because the excess over the debt is not lost to the debtor or other creditors.

The *Connecticut Inc.* court's mistake was to rely on outdated law: *Inland Security Co., Inc. v. Estate of Kirshner,* 382 F.Supp. 338 (W.D.Mo.1974), *In re 550 Les Mouches Fashions, Ltd.,* 24 B.R. 509 (Bankr.S.D.N.Y.1982), *Hemphill v. T. & F. Land Co.,* 18 B.R. 38 (Bankr.S.D.Iowa 1982) and *First Nat'l Bank of Dalton v. Browning Tufters, Inc.,* 3 B.R. 487 (Bankr.N.D.Ga.1980). These cases construed and applied Bankruptcy Act § 67d, which was the predecessor section to 11 U.S.C. § 548. Section 67d(2)(a) provided in pertinent part:

> (2) Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without *fair consideration* by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; . . . .

11 U.S.C. § 107 (1976) (emphasis supplied). Section 67d(*l*)(e) provided in pertinent part:

> (e) consideration given for the property or obligation of a debtor is 'fair' (1) when, in good faith, in exchange and as a fair equivalent therefor, property is transferred or an antecedent debt is satisfied, or (2) when such property or obligation is received in good faith to secure a present advance or antecedent debt *in an amount not disproportionately small as compared with the value of the property or obligation obtained.*

11 U.S.C. § 107 (1976) (emphasis supplied).

The obvious change from old Act to the current Bankruptcy Code is from a standard

of "fair consideration" to one of "reasonably equivalent value." The focus is now on values, rather than "fairness." Consistent with that change, the Act requirement that the value of the collateral not be disproportionately small as compared with the debt is nowhere to be found in the Code. It is, however, the basis of the holding in *Connecticut Inc.* That decision relied upon pre-Code cases and cases that looked to pre-Code law. Interpreting sec. 67d of the Act, the court in *Inland Security Co., Inc. v. Estate of Kirshner*, 382 F.Supp. 338, held that "[w]hen property is transferred or an obligation incurred for purposes of security, it is only necessary that its value not be disproportionately large as compared with the amount of the advance or debt secured." Similarly, in *First Nat'l Bank of Dalton v. Browning Tufters, Inc.*, 3 B.R. 487, the court held that "an exchange of property that is a fair equivalent of the property transferred by the debtor" is necessary to a finding of "fair consideration" as required by the Act. In both *In re 550 Les Mouches Fashions, Ltd.*, 24 B.R. 509 and *Hemphill v. T. & F. Land Co.*, 18 B.R. 38, the courts cited to the Act and referred to the same standard in spite of the 1979 enactment of the Code. The *Connecticut Inc.* court's reliance on these cases was seriously misplaced.[2]

Here, the value of Anand's interest in the Mokena property is in sharp dispute, but the value is irrelevant to determining whether Anand received less than reasonably equivalent value for executing the CABI. By executing the CABI, Anand collateralized the pre-existing loan that was then at about $273,003.59 or $262,583.00, depending on whose version of the events is accepted. Nevertheless, Anand did not take on additional debt by executing the CABI and the Bank did not become entitled to enforce the loan to any greater extent than the pre-existing debt. If the Bank had foreclosed on the property, it would not have received the

value of the property or Anand's interest in it. It would have received only the amount due on the loan. Therefore, the Debtor did not receive less than reasonably equivalent value for putting up his interest in the Mokena property as collateral.

## CONCLUSION

For the foregoing reasons, this court finds that Anand received "reasonably equivalent value" in exchange for executing the CABI and is therefore not entitled to relief pursuant to 11 U.S.C. § 548. Judgment will again be entered in favor of the defendant.

**2.** The Connecticut court also cited to *In re Bundles*, 856 F.2d 815, a 1988 Seventh Circuit opinion interpreting "reasonably equivalent value." In *Bundles*, however, the court reviewed the concept as it related to foreclosure sales and held that the sale price obtained at a regularly conducted noncollusive foreclosure could be automatically deemed to provide reasonably equivalent value. The price received at a foreclosure sale is a different issue that the collateralization of an antecedent debt. At a foreclosure sale, there is an exchange of property for money which must be reasonably equivalent. By definition, the collateralization of a preexisting debt does not require the debtor to relinquish rights in his property any greater in value than the debt.