### In re OAKWOOD HOMES CORPORATION, et al., Debtors.

**OHC Liquidation Trust, by and through Alvarez & Marsal, LLC, the OHC Liquidation Trustee, Plaintiff,**

v.

**Discover Re and United States Fidelity & Guaranty Co., Defendants.**

Bankruptcy No. 02–13396(PJW).
Adversary No. 05–51766 (PJW).

United States Bankruptcy Court, D. Delaware.

May 10, 2006.

Jeffrey C. Wisler, Christina M. Thompson, Connolly, Bove, Lodge & Hutz LLP, Wilmington, DE, Harold S. Horwich, Stephen M. Hryniewicz, Bingham McCutchen LLP, Hartford, CT, for Defendants Discover Re and United States Fidelity & Guaranty Co.

Donna L. Culver, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Robert Stark, Emilio A. Galván, Dana S. Montone, Brown, Rudnick, Berlack, Israels LLP, New York, NY, for OHC Liquidation Trust, by and through Alvarez & Marsal LLC, the OHC Liquidation Trustee.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to the defendants Discovery Re[1] and United States Fidelity & Guaranty Co.'s motion to dismiss (Adv.Doc. # 13) the plaintiff OHC Liquidating Trust's adversary complaint (Adv.Doc. # 1). For the reasons stated below, the Court will grant the motion as to Counts I, II, V and VI, but will deny the motion as to Counts III, IV and VII.

## BACKGROUND

Before its bankruptcy, the Oakwood Homes Corporation (the "Debtor") was a major manufacturer and retailer of modular homes (Adv.Doc. # 1, ¶ 8). Defendant Discovery Re is an insurance company having its principal place of business in Connecticut (Adv.Doc. # 1, ¶ 10). Discovery Re is a wholly-owned subsidiary of defendant United States Fidelity & Guaranty Company, who is also an insurance company having its principal place of business in Connecticut (Adv.Doc. # 1, ¶ 10).

On July 1, 1998, the Debtor and the defendants entered into two agreements: the Indemnity Agreement and the Premium and Loan Agreement (Adv.Doc. # 1, ¶ 21). In connection with these two agreements, the defendants issued workers' compensation, automobile liability and general liability insurance policies to the Debtor for the period of July 1, 1998 through June 30, 2002 (Adv.Doc. # 1, ¶¶ 21, 23).

The Premium and Loan Agreement required the Debtor to pay premium cash payments during the terms of the policies and reimburse the defendants for certain deductibles (Adv.Doc. # 1, ¶ 22). According to the complaint, the deductibles were so high that they placed "nearly all of the cost and expenses" on the Debtor (Adv. Doc. # 1, ¶ 20). In addition, the Premium Loan Agreement and the Indemnity Agreement required the Debtor to provide security (Adv.Doc. # 1, ¶ 22). Initially, the security took the form of two bonds: a bond issued by U.S. Fire Insurance Company and a bond to cover the excess issued by American International Group, Inc.

---

1. According to the defendants, the case caption improperly lists, and the complaint improperly refers to, Discovery Re. The defendants assert that the entity associated with the

· Oakwood Homes Corporation's insurance program is Discovery Managers, Ltd. For purposes of this motion, the Court will use the name Discovery Re.

(AIG). In 2002, AIG determined not to renew the bond (Adv.Doc. # 1, ¶¶ 22, 23). To replace the AIG bond, the Debtor provided for a letter of credit, through Wells Fargo Bank, N.A. ("Wells Fargo"), in favor of the defendants (Adv.Doc. # 1, ¶ 23).

As of the last policy period, which ended June 30, 2002, the defendants had $16 million accessible to them through the bond and letter of credit (Adv.Doc. # 1, ¶ 23). Of that $16 million, $9.5 million was in the form of the letter of credit and $6.5 million was in the form of the U.S. Fire Insurance Company surety bond (Adv.Doc. # 1, ¶ 23).

On November 15, 2002, the Debtor and its related entities filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code")[2] (Doc. # 1). On March 31, 2004, this Court confirmed the Debtors' "Second Amended Joint Consolidated Plan of Reorganization of Oakwood Homes Corporation and Its Affiliated Debtors and Debtors–In–Possession" (the "Plan") (Adv.Doc. # 1, ¶ 12). The Plan became effective as to the relevant debtors in April 2004 (Adv.Doc. # 1, ¶ 12).

Section 6.3(b) of the Plan and Section 2.2 of the Trust Agreement provide for the creation of the OHC Liquidating Trust (the "Liquidating Trust" or the plaintiff) (Adv.Doc. # 1, ¶ 13). The Liquidating Trust is vested with the right to prosecute and settle turnover, avoidance, and all other unsettled estate causes of action (Adv. Doc. # 1, ¶ 14).

By May 2004, the defendants had drawn down the full amount of the $6.5 million surety bond (Adv.Doc. # 1, ¶ 25). By June 2004, the defendants had drawn down the entire $9.5 million balance of the letter of credit (Adv.Doc. # 1, ¶ 24). Between April 15, 2004 and March 31, 2005, the defendants had paid out only $1,460,000 to claimants (Adv.Doc. # 1, ¶ 2). The defendants continue to hold $14.5 million (Adv. Doc. # 1, ¶ 2).

On June 1, 2005, the Liquidating Trust commenced this adversary proceeding, alleging, among other things, that the retention of the $14.5 million is improper and that at least some of that money belongs to the Debtor (Adv.Doc. # 1, ¶¶ 1–3). On December 5, 2005, the defendants filed the instant motion seeking to dismiss the complaint against them (Adv.Doc. # 13).

## DISCUSSION

A motion to dismiss for failure to state a claim upon which relief can be granted serves to test the sufficiency of the complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). When deciding such a motion, a court accepts as true all allegations in the complaint and draws all reasonable inferences from it which the court considers in a light most favorable to the plaintiff. *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). A court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Maio v. Aetna, Inc.,* 221 F.3d 472, 482 (3d. Cir.2000) (quotations omitted).

*Proper Forum*

■ At the outset, the defendants argue that the Court should dismiss this action because it was brought in an improper forum (Adv.Doc. # 14, p. 1). The Court disagrees.

2. Individual sections of the Bankruptcy Code will be cited herein as " § ____."

■ According to the defendants, the parties' agreements require the plaintiff to bring the complaint in a state or federal court in Connecticut. The Indemnity Agreement and the Premium and Loan Plan Agreement contain the relevant provisions:

APPLICABLE LAW

This Agreement shall be governed by and construed in accordance with the laws of the State of Connecticut, without regard to its rules regarding conflict of laws.

CONSENT TO JURISDICTION

To the extent that any legal action, suit or proceeding arises out of or relates to this Agreement or the transactions contemplated hereby, the parties hereto irrevocably submit to the jurisdiction of the state courts of the State of Connecticut or any Federal Court located in the State of Connecticut to hear and determine such action, suit or proceeding. Each party agrees not to assert as a defense in any such action, suit or proceeding, any Claim that it is not subject personally to the jurisdiction of such court; that its property is exempt or immune from attachment or execution; that the action, suit or proceeding is brought in an inconvenient forum; that the venue of the action, suit or proceeding is improper; or that this Agreement or the subject matter hereof may not be enforced in or by such court.

(Adv.Doc. # 1, Ex. A, pp. 13–14, Ex. B, pp. 6–7). The defendants state, and the Court agrees, that Connecticut law will determine the effect of the above excerpted forum selection clause (Adv. Doc. # 14, p. 8 (citing *Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356–58 (3d Cir.1986))). Federal case law, nevertheless, is persuasive. *Gen. Eng'g Corp.*, 783 F.2d at 358.

■ Forum selection clauses are classified as either mandatory or permissive. A mandatory forum selection clause grants exclusive jurisdiction to a particular forum. A permissive forum selection clause, on the other hand, is nonexclusive. *See John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distribs.*, 22 F.3d 51, 52–53 (2d Cir.1994).

■ "The general rule in cases containing forum selection clauses is that [w]hen only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." *Id.* at 52 (quotations omitted). In other words, "an agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains *specific language of exclusion.*" *Id.* at 53 (emphasis added). "Connecticut case law also appears to impose the requirement that the language of the clause indicate that the forum choice is exclusive." *Synergy Nutritional Indus. v. Sports One*, CV020469163S, 2002 Conn.Super. LEXIS 3972, at *4 (Conn.Super.Ct. Dec. 5, 2002). Here, the forum selection clause lacks any "specific language of exclusion" and, therefore, is permissive.

The clause states that "the parties hereto irrevocably submit to the jurisdiction of the state courts of the State of Connecticut or any Federal Court located in the State of Connecticut to hear and determine such action, suit or proceeding." From this, the defendants' sole argument (which they cite no case law to support) is that the phrase "irrevocably submit" shows that the clause is mandatory (Adv.Doc. # 19, p. 15). "Irrevocably" means not revocable or not able to be "tak[en] back." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 620, 1003 (10th ed.1993). "Submit" means "to yield oneself to the authority or will of another," "to

permit oneself to be subjected to something" or "to defer to or consent to abide by the opinion or authority of another." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1173 (10th ed.1993). Read plainly, the parties have merely consented to jurisdiction. *See Zokaites v. Land–Cellular Corp.*, 424 F.Supp.2d 824, 835 (W.D.Pa. 2006) ("[W]here the agreement indicates the parties only agreed that a particular forum was appropriate and each party will 'irrevocably submit' to the jurisdiction of that forum, a permissive forum clause is created and redress may be obtained in another appropriate court."); *GMAC Commer. Mortg. Corp. v. LaSalle Bank Nat'l Ass'n*, 242 F.Supp.2d 279, 283 (S.D.N.Y. 2002) ("[W]here, as here, the parties 'irrevocably submit to the jurisdiction of each such court,' the meaning is not exclusive but, rather, is 'permissive.' "); *Proyecfin de Venezuela, S.A. v. Banco Indus. de Venezuela, S.A.*, 760 F.2d 390, 395–97 (2d Cir.1985) (determining that a forum selection clause containing the words "irrevocably submits" was permissive); *Synergy Nutritional*, 2002 Conn.Super. LEXIS 3972, at *4 (applying Connecting law and determining that a clause containing the phrase "irrevocably agrees" was permissive).

Accordingly, the Court rejects the defendants' argument that the forum selection clause warrants dismissal of this action.

*Count I*

 Count I of the complaint seeks an estimation of the defendants' claim pursuant to § 502(c)(1) and recovery of estate property pursuant to § 105(a). Those sections do not permit this Court to grant the relief that the plaintiff requests. Thus, Count I fails to state a claim upon which relief can be granted.

Section 502(c)(1) involves the estimation of a claim for purposes of allowance:

(c) There shall be estimated for purpose of allowance under this section—

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case

Neither the plaintiff nor the defendants ever discuss or even cite § 502(c)(1) in their briefs. This section has no application here where the plaintiff debtor seeks recovery against non-creditor defendants.

 Section 105(a), similarly, is of no use to the plaintiff. That section authorizes a court to "issue any order ... that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Section 105(a) "supplements courts' specifically enumerated bankruptcy powers," *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 211 (3d Cir.2000), but "does not give the court the power to create substantive rights ...," *United States v. Pepperman*, 976 F.2d 123, 131 (3d Cir. 1992) (quotations omitted).

 In other words, § 105(a) "must be exercised within the parameters of the Code itself." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir.2004). "The fact that a [bankruptcy] proceeding is equitable does not give the judge a free-floating discretion to redistribute rights in accordance with his [or her] personal views of justice and fairness, however enlightened those views may be." *Pepperman*, 976 F.2d 123, 131 (3d Cir.1992) (quotations omitted, alterations in original). Consequently, Count I fails to state a claim upon which relief can be granted.

*Count II*

 Count II of the complaint seeks recovery of estate property under §§ 541 and 542. As discussed below, § 541 does

not cover the property that the plaintiff seeks to recover because the surety and letter of credit and their proceeds are not property of the estate, and the recovery is disputed and unliquidated so § 542 would be inappropriate under the circumstances. Accordingly, Count II will be dismissed for failure to state a claim.

■■■ "A letter of credit comprises three separate contracts." *Demczyk v. Mutual Life Ins. Co. (In re Graham Square)*, 126 F.3d 823, 827 (6th Cir.1997). The first generally arises between a buyer and seller; here, the Debtor purchased insurance policies from the defendants. *Id.* The second arises between the account party, here the Debtor, and the bank or issuer, Wells Fargo. *Id.* Finally, the third contract arises between the issuer, Wells Fargo, and the beneficiaries of the letter of credit, the defendants. *Id.*

■■■ "The relationship between each pair of parties involved in a letter of credit transaction is entirely independent, although each relationship is necessary to support a letter of credit, somewhat like the three legs of a tripod." *P.A. Bergner & Co. v. Bank One, N.A. (In re P.A. Bergner & Co.)*, 140 F.3d 1111, 1114 (7th Cir.1998). "This rule is predicated on the 'independence principle' which seeks to preserve the viability of letters of credit, whose purpose is to allow the beneficiary to draw on the money before obtaining a judgment." *Int'l Fin. Corp. v. Kaiser Group Int'l Inc. (In re Kaiser Group Int'l Inc.)*, 399 F.3d 558, 566 (3d Cir.2005). "This [independence] insulates the letter of credit from disputes over performance of collateral agreements and allows the letter of credit to function as a swift and certain payment mechanism." *Demczyk*, 126 F.3d at 827 (quotations omitted).

In light of the fact that each of these three relationships is independent, it is "well-established" that "a letter of credit and the proceeds therefrom are not property of the debtor's estate." *Kaiser* 399 F.3d at 566 (quoting *In re Compton Corp.*, 831 F.2d 586, 589 (5th Cir.1987)). However, the Third Circuit has stated that "the collateral pledged as a security interest for the letter of credit is [property of the estate]." *Kaiser* 399 F.3d at 566 (quoting *In re Compton Corp.*, 831 F.2d at 590–91).

Property in which a creditor has a security interest in has long been considered property of the estate. *In re Contractors Equipment Supply Co.*, 861 F.2d 241, 244 (9th Cir.1988) (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)). However, when this concept is coupled with the independence principle, some confusion results. To clarify, the Third Circuit has stated that "where the claim centers around the *collateral* pledged to the bank and *not* the distribution of the proceeds themselves, 'the fact that letters of credit themselves are not property of the estate is a red herring.'" *Kaiser*, 399 F.3d at 566 (quoting *Redback Networks, Inc. v. Mayan Networks Corp. (In re Mayan Networks Corp.)*, 306 B.R. 295, 299 (9th Cir. BAP 2004)).

In this case, however, the plaintiff is seeking turnover of the letter of credit's proceeds-it is not pursuing the pledged collateral. The plaintiff cannot prevail on this claim because, as stated, the proceeds of a letter of credit are not property of the estate and are, therefore, not recoverable under § 542. *Hechinger Inv. Co. of Del., Inc. v. Allfirst Bank (In re Hechinger Inv. Co. of Del., Inc.)*, 282 B.R. 149, 161 (Bankr. D.Del.2002).

■■■ In addition, "[t]urnover under 11 U.S.C. § 542 is a remedy available to debtors to obtain what is acknowledged to be property of the bankruptcy estate. (citations omitted). It is not a remedy avail-

able to recover claimed debts which remain unliquidated and/or in dispute." *Id.* at 161–62. Here, the claim is both unliquidated and in dispute.

First, the complaint itself shows that the claim is unliquidated. For example, Count I of the complaint asks this Court to estimate the amount owed (Adv.Doc. # 1, ¶ 37). Further, throughout the complaint, the plaintiff repeatedly references its entitlement to the "excess," which is described as a "significant amount of the money." (Adv.Doc. # 1, ¶ 2, 31, 37). As is clear, this significant amount of money has not yet been determined and is unliquidated.

Second, whether the defendants owe anything is sharply disputed and is the subject of the complaint's contract counts. As this Court stated in *Hechinger,* a debtor may not use a turnover action to "circumvent" its contract claims and "recover that to which [it] has not yet established [as] an undisputed, liquidated claim." *Hechinger,* 282 B.R. at 162. "The fact that Debtor may have equitable interests in certain breach of contract claims which seek to recover the [d]rawn [f]unds, which interests constitute property of the estate, does not alter the result." *Id.* at 161. Rather, this fact merely shows that the plaintiff's rights must be resolved through its contractual (and related) causes of action.

The plaintiff resists this conclusion, relying erroneously on *Kaiser* to support the position that a turnover action is proper under the circumstances. *Kaiser* did not involve a turnover action;[3] rather, *Kaiser* addressed several contract and related claims, including breach of contract, breach of warranty, unjust enrichment, quantum meruit, tortious interference with a contract and tortious interference with a

business relationship. Allowing such claims to go forward does no violence to the independence principle. *Kaiser* 399 F.3d at 563–64. These claims were premised on the relationship between the debtor and the beneficiary of the letter of credit. *Id.* This is permissible. Such claims focus on one leg of the tripod and one leg only.

Thus, *Kaiser* does not advance the plaintiff's argument. *Kaiser* dealt with different causes of action and addressed a different issue. The question in *Kaiser* focused on whether the debtor was even a party to the letter of credit transaction. *Id.* at 564, 567. The District Court held that the debtor was not a party to the contract and that its contractual claims were not property of the estate. *Id.* The Third Circuit reversed. The facts leading to that reversal are as follows.

The debtor's wholly-owned non-debtor subsidiary entered into a letter of credit transaction. *Id.* at 562. The debtor was not a party to the initial contract, however, the debtor (1) posted $11.1 million in cash collateral with the issuing bank, (2) executed a guaranty of performance, allowing the beneficiary of the letter of credit to seek liquidated damages against it in the event the non-debtor subsidiary was unable to perform, and (3) agreed to extend the letter of credit's expiration date if the beneficiary promised not to draw upon it. *Id.* at 562–63. Despite its promise, the beneficiary drew down on the letter of credit. *Id.* at 563. Litigation followed. The Third Circuit determined that the debtor had both contractual and equitable claims against the beneficiary. These claims against the beneficiary were property of the estate. *Id.* at 567.

---

**3.** In fact, the one case that the plaintiff cites involving § 542 is *Hechinger,* which the plaintiff only cites in a footnote in an attempt to distinguish it from the case at hand (Adv. Doc. # 17, p. 20 n. 14). *Hechinger,* however, is directly on point.

The issues resolved in *Kaiser*, thus, had nothing to do with a turnover action under § 542. That case merely held that contractual and equitable claims of the debtor are property of the estate, but proceeds of a letter of credit are not. *Id.* at 566–67. Here, this Court comes to the same conclusion.

Consequently, the plaintiff's success depends on its contractual (and related) rights. These rights are in dispute and any damages the plaintiff has suffered have yet to be liquidated. In such circumstances, a turnover action is inappropriate. *See, e.g., Hechinger*, 282 B.R. at 162. The Court will grant the defendants' motion to dismiss Count II.

*Count III*

■ Count III of the complaint alleges that the defendants refused to return the excess funds and that the refusal constitutes a breach of the agreements. The defendants assert that their retention of the funds is not a breach. The issue is one of contract interpretation.

■ Ordinarily, contract interpretation is a question of fact. *PSE Consulting, Inc. v. Frank Mercede & Sons, Inc.*, 267 Conn. 279, 838 A.2d 135, 145 (2004). However, if there is "definitive contract language," then the determination is a question of law. *Id.* The defendants assert that their interpretation is the only one possible, in other words, there is definitive contract language. If true, then that would end this Court's inquiry. I do not accept this as true, however.

■ In the Court's view, at this early stage, there is no clearly articulated provision in the agreements that supports either parties' position. The provisions cited are either unclear or simply inapplicable. Therefore, under Connecticut law, a court may look to industry custom to interpret a contract that is ambiguous or silent on a particular point. *New England Rock Servs., Inc. v. Empire Paving, Inc.*, 53 Conn.App. 771, 731 A.2d 784, 789 (1999). Whether industry custom will support the plaintiff's interpretation, as it argues, will have to await trial. Thus, the Court is confronted with an issue of fact that is inappropriately resolved on a motion to dismiss. The defendants' motion to dismiss Count III will be denied.

*Count IV*

Count IV of the complaint alleges a breach of the implied covenant of good faith and fair dealing. The defendants argue that this count should be dismissed because the complaint fails to allege the requisite bad faith (Adv.Doc. # 14, p. 23). The Court disagrees.

■ Under Connecticut law, "[e]very contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *Habetz v. Condon*, 224 Conn. 231, 618 A.2d 501, 505 (1992). To state a claim for breach of the covenant of good faith and fair dealing, the plaintiff must plead three elements:

> [F]irst, that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; second, that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and third, that when committing the acts by which it injured the plaintiff's right to receive benefits it reasonably expected to receive under the contract, the defendant was acting in bad faith.

*DSM, Inc. v. Sentry Select Ins. Co.*, 31 Conn. L. Rptr. 650, 2002 WL 652424, at *2 (Conn.Super.Mar.22, 2002).

■ The defendants do not contest that the plaintiff has properly pleaded the first two elements. But the defendants assert that the complaint fails to allege the third element, bad faith. In this context, the Connecticut Supreme Court has defined bad faith:

> Bad faith in general implies both "actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." BLACK'S LAW DICTIONARY (5th Ed.1979). Bad faith means more than mere negligence; it involves a dishonest purpose.

*Habetz*, 618 A.2d at 504. Bad faith is a question of fact. *Id.* at 505 n. 11. Reading the complaint in a light most favorable to the plaintiff, such bad faith may be inferred.

The complaint alleges that the defendants are keeping the plaintiff's excess funds "captive" and seek to hold these funds in perpetuity (Adv.Doc. # 1, ¶ 31). According to the complaint, the funds are clearly owing to the plaintiff and the amount of the excess can be readily determined by a "routine[ ]" analysis, which the defendants refuse to conduct (Adv.Doc. # 1, ¶ 28). In addition, the complaint alleges that the defendants have in bad faith repeatedly turned back the plaintiff's attempts at negotiating the release of the excess funds (Adv.Doc. # 1, ¶¶ 49–52). From the allegations, an inference may be drawn that the defendants know that the funds belong to the plaintiff but, nonetheless, seek to retain them for their own selfish motives. Therefore, the complaint sufficiently states a claim for breach of the covenant of good faith and fair dealing.

### Count V and VI

■ Count V of the complaint alleges a fraudulent transfer under § 544 and applicable state law. The defendants contend that Count V must be dismissed because the Debtor did not transfer property of the estate to or for the benefit of the defendants. The plaintiff disagrees. Whether the transferred property was property of the estate depends on which transfer the plaintiff is complaining of. *See Kaiser*, 399 F.3d at 566. Reading the complaint and the plaintiff's brief, it appears the transfer was the draw on the letter of credit. This, of course, is not property of the estate. *See id.* However, the plaintiff also implies in its brief that it is prepared to move forward under the theory that the transfer was the pledge (by the Debtor) of the collateral (to the bank) (Adv.Doc. # 17, p. 21). This would be property of the estate. *See id.*

The distinction is not merely academic. Determining what the transfer is and when it occurred is critical. For example, the amount of time the plaintiff has to bring the action dates back to the time of the transfer. *See, e.g.,* 11 U.S.C. § 548(a)(1). Also, insolvency and reasonable equivalence are determined as of the date of the transfer. *Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L. (In re R.M.L.)*, 92 F.3d 139, 154 (3d Cir.1996); *Peltz v. Hatten*, 279 B.R. 710, 737 (D.Del.2002). Thus, the Court will dismiss Count V and Count VI (which seeks to recover the avoided transfer). However, the Court will grant the plaintiff the right to file an amended complaint within 30 days.

In coming to this conclusion, the Court declines to consider the affidavit submitted by Mr. Joseph Buczkowski. Also, the Court will not accept the factual representations contained in the plaintiff's brief. The complaint does not describe the rela-

tionship between the Debtor and the bank and makes no mention of a second letter of credit. The plaintiff cannot fill these gaps by making factual representations in its brief and submitting supporting affidavits. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993). Thus, the plaintiff is given leave to amend its complaint so it may properly identify what transfer or transfers are at issue.

In sum, the Court accepts the plaintiff's offer: "the OHC Trust is prepared to amend its Complaint to add more specific allegations concerning the collateral that Oakwood posted to secure the LOC and the surety bond at issue." (Adv.Doc. # 17, p. 21). Accordingly, Count V and VI will be dismissed, with leave to amend the complaint within 30 days.[4]

*Count VII*

 Count VII of the complaint properly states a claim for unjust enrichment. To recover under a theory of unjust enrichment, the plaintiff must show that "(1) the defendant was benefited, (2) the defendant unjustly failed to pay the plaintiff for the benefits, and (3) the failure of payment was to the plaintiff's detriment." *Gagne v. Vaccaro*, 255 Conn. 390, 766 A.2d 416, 428 (2001). Also, "lack of a remedy under the contract is a precondition for recovery based upon unjust enrichment." *Id.* at 424.

 The defendants argue that Count VII fails to state a claim for three reasons. First, the defendants argue that, according to the complaint, an express contract covers the disputed subject matter. This argument fails. Federal Rule of Civil Procedure 8(e)(2) authorizes a plaintiff to plead inconsistent theories in the alternative.

Second, the defendants argue that the proceeds of a letter of credit are not property of the estate. This is true. But as discussed above, the estate has a recognized interest in the contractual and equitable claims of the Debtor. Pursuing a theory of unjust enrichment does not violate the independence principle any more than a breach of contract claim. *See, e.g., Kaiser*, 399 F.3d at 564 (holding an unjust enrichment claim was property of the estate).

 Third, the defendants argue that the plaintiff will not be able to meet the three requirements of unjust enrichment. On a motion to dismiss, however, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d. Cir.2000) (quotations omitted). If the agreements do not cover the excess funds, and if the funds held by the defendants clearly exceed the amount of any possible liability of the plaintiff and are earning interest for the defendants, then the defendants are likely being unjustly enriched at the plaintiff's expense. Unjust enrichment is a "very broad and flexible equitable doctrine," which is "highly fact-intensive." *Gagne v. Vaccaro*, 766 A.2d at 427–28. The Court concludes that Count VII states a claim for unjust enrichment.

**CONCLUSION**

For the foregoing reasons, the Court will grant the defendants' motion to dismiss with respect to Counts I, II, V and

---

4. The Court notes that even if an amended complaint identifies the collateral pledged as the subject transfer or transfers, the plaintiff's fraudulent conveyance claim may have a problem with the reasonably equivalent value issue. *See Anand v. Nat'l Republic Bank (In re Anand)*, 210 B.R. 456, 458–59 (Bankr. N.D.Ill.1997) *aff'd on different grounds* 239 B.R. 511, 517 (N.D.Ill.1999).

VI, but will deny it with respect to Counts III, IV and VII. The plaintiff will be given leave to file an amended complaint within 30 days to identify properly the transfer(s) at issue in Counts V and VI.

### ORDER

For the reasons set forth in the Court's memorandum opinion of this date, the defendants' motion (Adv.Doc. # 13) to dismiss all counts of the Complaint is **GRANTED** as to Counts I, II, V and VI and is **DENIED** as to Counts III, IV and VII; provided that, as directed in the memorandum opinion, as to Counts V and VI the plaintiff is given leave to file and serve an amended complaint within thirty (30) days to properly identify the transfer or transfers at issue.