Dinesh S. ANAND and Gyan D. Anand, Plaintiffs–Appellant,

v.

NATIONAL REPUBLIC BANK OF CHICAGO and Harris Bank Hinsdale, Defendant–Appellee.

No. 97 C 6873.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 14, 1999.

Gerald M. Sheridan, Jr., Christina Lass, Sheridan & Associates, P.C., Wheaton, IL, for plaintiffs.

Ariel Weissberg, Herman Marino, Richard N. Steiner, Weissberg and Associate Ltd., Chicago, IL, for National Republic Bank.

## MEMORANDUM OPINION AND ORDER

PALLMEYER, District Judge.

Dinesh Anand, debtor in bankruptcy, transferred his interest in a land trust to Republic National Bank in July 1992, a few months before filing a Chapter 11 bankruptcy petition. He seeks to avoid the transfer based on the constructive fraud provisions of the Bankruptcy Code, under which a debtor may avoid a transfer if, *inter alia*, "the debtor received less than a reasonably equivalent value in exchange for [the] transfer." 11 U.S.C. § 548(a)(2)(A). The bankruptcy court has twice rejected Anand's claims, and he now appeals for the second time. For the reasons that follow, the decision of the bankruptcy court is affirmed.

## PROCEDURAL HISTORY

Anand filed for protection under Chapter 11 of the Bankruptcy Code in January 1993. In August 1993, Anand filed an

Adversary Complaint to Avoid Transfer of Interest of Debtors in Property against National Republic Bank (the "Bank"). After hearing evidence in Anand's case in chief, Bankruptcy Judge Ronald Barliant granted a judgment on partial findings in favor of the Bank, and at the close of the evidence Judge Barliant denied Anand any relief. Anand appealed, and in October 1996 Judge Brian Barnett Duff of this court affirmed the decision in part and vacated and remanded in part. *In re Anand*, No. 95 C 3940, 1996 WL 596399 (N.D.Ill. Oct. 10, 1996). On remand, the bankruptcy court again rejected Anand's claims. *In re Anand*, 210 B.R. 456 (Bankr. N.D.Ill.1997). The bankruptcy court denied Anand's motion for rehearing or in the alternative for relief from the judgment under FED.R.BANKR.P. 9024 and FED. R.CIV.P. 60(b)(6). Anand timely filed the instant appeal on August 25, 1997.

## Factual Background

Rather than reinvent the wheel, the court will rely mainly on excerpts from the factual summaries from the earlier decisions in this case. As more fully set forth in those earlier opinions, Anand, a real estate developer, seeks to avoid the transfer of his sixty percent interest[1] in a land trust which holds title to property in Mokena, Illinois. This transfer came about as follows:

[O]n April 29, 1991, the Bank lent Anand $250,000 for working capital in his real estate ventures, secured by a second mortgage on Anand's home. On January 2, 1992, the Bank made an additional $10,000 loan to Anand. By July 10, 1992, Anand was in default on the $250,-000 note [-he had made none of the required monthly interest payments, and had failed to make a $50,000 principal payment due under the terms of the agreement on April 29, 1992], the $10,-000 note and an interim agreement meant to deal with Anand's financial problems. The loans had come to be

1. Anand's son-in-law, Rahul Deepankar, holds   the other forty percent interest.

virtually unsecured. Then, on July 31, 1992, Anand executed a collateral assignment of beneficial interest ("CABI") in which he assigned his 60% interest in the Mokena property as collateral for the Bank's loans.

210 B.R. at 458. The terms of an "extension/modification agreement" attached to the CABI provided for forbearance by the Bank, waiver of the past-due $50,000 principal payment, and extension of the maturity date of the notes.[2] Anand claims that he also discussed a consolidation loan with the Bank, the proceeds of which he intended to use to satisfy the first mortgage on his home, which was in foreclosure. In October 1992, Anand executed an "absolute assignment" of his interest in the Mokena trust, subject to a provision allowing Anand to redeem his interest within one year by satisfying all his debts with the Bank.

As noted, in January 1993, Anand filed a Chapter 11 petition. Thereafter, on August 25, 1993, he filed this adversary petition, contending that both transfers were avoidable as actual and constructive fraud under 11 U.S.C. § 548,[3] and that the October transfer was avoidable as a preference under 11 U.S.C. § 547. Judge Barliant dismissed these claims. Judge Duff summarized the bankruptcy court's decision as follows:

> After hearing the evidence presented during Anand's case in chief, the bankruptcy court denied Anand's § 548 claim to avoid the transfers because they were procured by "actual fraud" and granted

a "directed verdict" in favor of the Bank on this claim.... During the Bank's case, the bankruptcy court determined that the transfer had been for "reasonably equivalent value" and accordingly ruled that the two transfers could not be avoided under the "constructive fraud" provisions of § 548. In its opinion issued on May 19, 1995, the court resolved the remaining issues and denied Anand any relief. Specifically, the bankruptcy court concluded that the Bank's security interest was valid and had attached on July 31, 1992. Consequently, the court determined that the transfer of the security interest did not occur within the preference period and could not be avoided under § 547.

1996 WL 596399, at *3.

Judge Barliant ruled on Anand's constructive fraud claim in open court, and made the following comments in conjunction with his ruling:

> The Court: I have another question. If this assignment was made in consideration of an antecedent debt, isn't that for value under Section 548?
>
> Anand Counsel: I think that in the [Uniform] Commercial Code it's specifically defined as antecedent debt can be a value. Under this one it's reasonably equivalent. We have a transfer of the only major property left.
>
> The Court: The July 31 transfer—
>
> Anand Counsel: That's correct, Your Honor.

---

2. As Judge Duff described, the parties produced two versions of the CABI document. Judge Duff noted,

> The first version was signed twice by Anand, once on July 31, 1992 and again on October 8, 1992. This version was eventually notarized by a Bank employee and accepted by the Bank on October 9, 1992. The second version provided lines for the signatures of Anand and Rahul Deepankar, the owner of the remaining 40% interest in the Mokena property. This second version of the CABI was signed only by Anand but was never notarized. Moreover, this sec-

ond document was never signed by the Bank, the land trustee, or Deepankar. 1996 WL 596399, at *2.

3. The elements of a constructive fraud claim are that the debtor: (1) transferred property within one year of filing a petition in bankruptcy; (2) received less than reasonably equivalent value for the property transferred; and (3) either (a) was insolvent or became insolvent as a result of the transfer, (b) retained unreasonably small capital after the transfer, or (c) made the transfer with the intent to incur debts beyond its ability to pay. 11 U.S.C. § 548(a)(2).

Bank Counsel: Wait a minute. Wait, wait. The July 31st transfer was not an absolute transfer.

Anand Counsel: No, it was a collateral security transfer.

The Court: Collateral security transfer, exactly. So that it was a security interest before it was a security interest on account of an antecedent debt. I think that transfer is not within the scope of Section 548.

Anand Counsel: Is that the court's ruling then?

The Court: Yes.

\*\*\*

The Court: It's clear that this transaction, whatever else it was, was on account of an antecedent debt. That takes it out of the constructive fraud provisions.

(February 24, 1995 Transcript, at 145–47.)

Judge Barliant resolved the remaining issues in the case in a written order. He did not credit Anand's allegations that the Bank promised him a loan sufficient to "take out" his home mortgage. Further, regarding Anand's challenge to the validity of the CABI, Judge Barliant concluded that "[t]he Bank clearly gave 'value' to the Debtor in exchange for the CABU." (Record Ex. 6, at 13.) In support of this conclusion, Judge Barliant found that

[i]n exchange for the CABI, the Bank agreed to forbear from enforcing its rights against the Debtor; extend the Secured Note [(the $250,000 loan)] until July 31, 1994, two years after the original maturity date; and waive the $50,000 principal reduction payment due under the Secured Note. This agreement was memorialized in the Extension/Modification Agreement which Anand signed on July 31, 1992.

*Id.*

Judge Duff affirmed this finding, 1996 WL 596399, at \*9, and upheld all of the bankruptcy court's rulings save one. Judge Duff held that "[t]he bankruptcy court failed to make any explicit findings

regarding the 'reasonable equivalence' of the [July] exchange" when it decided Anand's constructive fraud claim. 1996 WL 596399, at \*8. The court therefore "vacate[d] the bankruptcy court's ruling and remand[ed] this claim in order to allow for more specific findings as to whether Anand received 'reasonably equivalent value.'" *Id.*

On remand, Judge Barliant made no additional factual findings in support of his conclusions. Rather, he decided that "as a matter of law collateralizing an antecedent debt cannot constitute less than reasonably equivalent value regardless of the value of the collateral." 210 B.R. at 457. The gist of Judge Barliant's reasoning was that Anand gave the Bank an interest in the Mokena property only sufficient to secure payment of his debts; if the Bank were to foreclose, it would receive only the amount due on the loans. Thus, Judge Barliant concluded, the value of the transferred collateral could not exceed the amount of the debt. In such circumstances the two values will always be reasonably equivalent. *Id.* at 459–60.

As part of his remand ruling, Judge Barliant observed, "[H]ere[,] the Debtor did not give up all of his interest in the Mokena property; he only gave the Bank an interest in that property sufficient to secure payment of his debts," and further noted that "[t]he value of the property, beyond the amount of the debt, is … not lost to the debtor or other creditors as a result of the transfer." 210 B.R. at 459. Anand characterizes Judge Barliant's statement that he did "give up all of his interest in the Mokena property" in July 1992 as inconsistent with the ruling Judge Barliant had made in 1995. Specifically, in his initial opinion, in 1995, Judge Barliant found that "[s]ince the CABI attached in July, the transfer of the Debtor's 60% interest in the Trust occurred outside the 90 day period required by § 547(b)." (Record Ex. 6, at 14.) He concluded, "The Bank's Security Interest is valid and attached on July 31, 1992," and therefore

held that the October 1992 transfer was not avoidable as a preference, because it did not occur within ninety days of Anand's bankruptcy petition. (*Id.* at 15.) Anand argued in his Rule 60(b)(6) motion for relief from judgment that the bankruptcy court's findings and conclusions in 1995 and 1997 were inconsistent because the 1995 ruling recognized the transfer as having occurred in July, whereas the 1997 ruling emphasized the limited nature of that transfer.

Judge Barliant denied the Rule 60(b)(6) motion from the bench. His substantive comments were as follows:

> [E]ven assuming that I do have jurisdiction [to reconsider the 1995 order], I think that the plaintiff has misconstrued what went on here. The plaintiff says in . . . the memorandum in support of the motion, "the court articulated for the first time in its May 21, 1997 order an opinion that Anand received reasonably equivalent value for the July 31, 1992 CABI, collateral assignment of beneficial interest securing the antecedent debt because Anand retained a residual ownership interest thereafter." Frankly, I find that an extraordinary statement. I never thought that there was any question that the July transaction, assuming it was valid, was a transfer of a security interest. It seems to me self-evident that a debtor who transfers a security interest is retaining an ownership interest. . . . As to what happened in October and how that issue got resolved, the question that was presented to me, as I recall, in 1995 was whether the October 9th transaction was a preferential transfer of another security interest, the perfection of the prior security interest. And I held whatever I held on that

issue. Reviewing the record, I don't see that it was argued that the transfer of the ownership issue was the preference. If the July transaction was a valid transfer of a security interest, it would not have been a preference because the debt would have been paid either to the value of the collateral, if the value of the collateral was less than the debt, or to the full amount of the debt, if the value of the collateral was equal to or greater than the debt.

(August 15, 1997 Transcript, at 3–5.)

## DISCUSSION

■ Anand basically raises two issues on appeal.[4] First, he claims that Judge Barliant erred in his determination on remand that a transfer to secure an antecedent debt will always be for reasonably equivalent value. Second, he contends it was error for Judge Barliant to deny his Rule 60(b)(6) motion for relief from judgment. This court reviews the bankruptcy court's legal conclusions de novo and its factual findings for clear error. *In re Cult Awareness Network, Inc.*, 151 F.3d 605, 607 (7th Cir.1998); *see also* FED. R.BANKR.P. 8013. As Judge Duff noted, clear error means that " 'although there is evidence to support the findings, the court is left with the definite and firm conviction that a mistake has been committed.' " 1996 WL 596399, at *3 (quoting *Matter of Robert Sheridan*, 57 F.3d 627, 633 (7th Cir.1995)). Mixed questions of law and fact also are reviewed under the clearly erroneous standard. *Matter of Teranis*, 128 F.3d 469, 471 (7th Cir.1997).

### Reasonably Equivalent Value

■ Determination of reasonably equivalent value under Section 548(a)(2) is a

---

4. Anand's brief lists nine "issues presented on appeal." Four "issues" fall under the auspices of the challenge to the bankruptcy court's conclusion that Anand received reasonably equivalent value for the CABI, and simply articulate different arguments against that determination. Three issues attack the propriety of the court's denial of Anand's motion for relief from judgment. Anand also asks this court to decide whether "the Bankruptcy Court fail[ed] to follow the mandate of the District Court on remand?" and whether "the Bankruptcy Court erred in denying Debtor's motion to reopen the proof on remand to present evidence of insolvency as of July 31, 1992?," the latter being an issue Anand acknowledges he did not argue in his brief to this court. (Appellant's Br., at 1–2).

two-step process. The court first asks whether the debtor received value, and then examines whether the value is reasonably equivalent to what the debtor gave up. *In re RML, Inc.*, 92 F.3d 139, 149, 152 (3d Cir.1996); *Matter of Bundles*, 856 F.2d 815, 824 (7th Cir.1988), *superceded on other grounds by BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). There is no dispute that collateralization of an antecedent debt confers value on the debtor, since the bankruptcy statute's definition of "value" includes "securing of a present or antecedent debt of the debtor." 11 U.S.C. § 548(d)(2)(A).

█ The second inquiry, whether what the debtor gave up was reasonably equivalent to what he received, is a slippery one. The Seventh Circuit has emphasized that it requires fact-specific case-by-case analysis. *See Barber v. Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir.1997); *Bundles*, 856 F.2d at 824. Anand argues that when he executed the CABI, "at best he gained a brief respite from threat of suit [by the Bank]." (Pl. Brief, at 33.) He claims his interest in the Mokena land trust was "collaterally assigned and effectively removed from the reach of [his] other unsecured creditors." (*Id.* at 31.) This transaction, he contends, meant he could not undertake further borrowing against the Mokena property, and enabled the Bank to "coerce" him into executing the absolute assignment in October. As to what he got in return, Anand concedes that the bankruptcy court found that he secured the $250,000 debt, extended the maturity of

the note, and received forbearance from the Bank. Anand maintains that the Bank was not bound by these provisions, however. Anand contends he really received nothing but a non-binding promise of forbearance, and a "perception" that the Bank would give him a loan to shore up his home mortgage.

The Bank notes that Anand received forbearance, an extension on the maturity of the $250,000 loan, and waiver of the past-due $50,000 principal payment. With respect to Anand's side of the transaction, the Bank points out that although Anand transferred collateral in the form of his interest in the Mokena trust, this interest was not a "tidy package," (Bank Br., at 20), as Anand's estranged son-in-law held the remaining forty percent of the trust interest, and he was hostile to Anand.

As already noted, on remand the bankruptcy court eschewed fact-intensive comparisons, and instead determined as a matter of law that any transfer to secure an antecedent debt is a transfer for reasonably equivalent value. By extension, this rule means that no transfer to secure an antecedent debt can be avoided as constructively fraudulent under 11 U.S.C. § 548. Neither party really delves into the particulars of Judge Barliant's analysis.

In this court's view, Judge Barliant's reasoning is persuasive. The key factor to bear in mind—one that Anand's argument mainly ignores—is that the debtor receives value simply by securing a debt.[5] The

---

5. This premise, of course, is not novel—it is exemplified by the definition of value at 11 U.S.C. § 548(d)(2)(A), as Judge Barliant recognized—but it is not necessarily intuitive. One commentator, noting this quirk, offered the following historical explanation:

Under Section 548(d)(2)(A) of the Code, which defines value for purposes of fraudulent conveyance law, a debtor that secures or pays an antecedent debt is deemed to receive reasonably equivalent value. At first glance, that result seems illogical. The debtor receives nothing tangible by securing or paying its debts;

rather, it gives away tangible collateral or cash. History and policy, however, can explain this apparent inconsistency. Historically, fraudulent conveyance law was intended to prevent fraud, and securing or paying a legitimate debt is not fraudulent. The rule may promote bankruptcy policy by allowing a troubled debtor the flexibility to secure or pay its debts in order to avoid default or reach an out-of-court settlement, thereby facilitating its rehabilitation. Thus, even under fraudulent conveyance law itself, the inability to verify the equivalence of values exchanged is irrelevant to

collateral makes he loan possible; the value received by the debtor is access to the loan proceeds; in the same sense, the value received by a debtor who satisfies an antecedent debt is the proceeds of the loan. This value conferred on the debtor is no less significant when the debtor provides security for an antecedent debt, rather than doing so at the time of the original loan transaction. When one focuses on the fact that the value the debtor receives is the proceeds of the loan itself—even where the debtor collateralizes an antecedent debt—then Judge Barliant's approach is eminently sensible. By definition, a security interest is pegged to the value of the secured assets; a high degree of equivalence between the two values is, therefore, a safe assumption.

Several constructive fraud cases remark, either directly or indirectly, on this proposition or the logic that supports it. *See, e.g., In re Mason,* 189 B.R. 932, 935 (Bankr.N.D.Iowa 1995); *In re Southmark,* 138 B.R. 820, 829–30 (Bankr.N.D.Tex.1992) (cited by Judge Barliant); *Johnson v. First Nat. Bank,* 81 B.R. 87, 89 (Bankr. N.D.Fla.1987) (observing with regard to mortgage used to guarantee a loan that "[t]he extent of the interest transferred is only the amount of the loan secured by the mortgage, not the value of the property encumbered"); *Matter of Am. Trading & Shipping, Inc.,* 24 B.R. 32, 36 (Bankr. S.D.Fla.1982). But Judge Barliant did not cite, and the court's research did not uncover, any authority that has held that securing an antecedent debt is always a transfer of reasonably equivalent value. Further, such a *per se* rule would represent a departure from the Seventh Circuit's emphasis on "all the facts of each case" as part of the reasonably equivalent value analysis. *Bundles,* 856 F.2d at 824. So, although the court can find no flaws in Judge Barliant's conclusion that Anand received reasonably equivalent value as a

matter of law, the court is constrained to consider facts that the bankruptcy court did not. *Cf. Matter of Love,* 957 F.2d 1350, 1361–62 (7th Cir.1992) (district court may rely on facts in the record not mentioned by bankruptcy court to affirm bankruptcy court's decision).

■ In circumstances such as these the court usually looks to the other value, beyond the loan, that the debtor received in conjunction with the transfer. *See, e.g., In re Ward,* 36 B.R. 794, 799 (Bankr.D.S.D. 1984) (considering creditor's voluntary forbearance and concluding it was reasonably equivalent value in exchange for debtors' mortgage to secure antecedent debt). This is because debtors generally do not collateralize an antecedent debt unless they are in default, and under pressure from the creditor to provide security for the loan. Consequently, the debtor often receives forbearance or other consideration when he secures the debt.

So too here. In his written order in 1995, Judge Barliant found that "[i]n exchange for the CABI, the Bank agreed to forbear from enforcing its rights against the Debtor; extend the Secured Note [(the $250,000 loan)] until July 31, 1994, two years after the original maturity date; and waive the $50,000 principal reduction payment." (Record Ex. 6, at 13.) Judge Duff affirmed this finding. *See* 1996 WL 596399, at *9. Nonetheless, Anand's position is that he did not receive reasonably equivalent value because "[t]he BANK never signed the" CABI. (Appellant's Br., at 31.) Anand states, "The BANK did not obligate itself in any binding way to forbear from suit, to extend maturity or to waive anything." (*Id.*) By this argument Anand effectively seeks to challenge anew the factual findings made by the bankruptcy court and affirmed by the district court, and this he cannot do. *See Key v. Sulli-*

the determination of reasonably equivalent value when the debtor secures antecedent debt, an action that may facilitate its rehabilitation.

Steven L. Schwarcz, *Rethinking Freedom of Contract: A Bankruptcy Paradigm,* 77 Tex. L.Rev. 515, 592–93 (1999) (notes omitted).

*van,* 925 F.2d 1056, 1060 (7th Cir.1991) ("[O]nce an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case.").

Because he is bound by the bankruptcy court's earlier factual findings, Anand cannot sustain his argument that he received nothing but gossamer promises from the Bank in exchange for the security interest in the Mokena trust. The bankruptcy court's factual findings that, as well as the value of the proceeds of the loan, the Bank gave forbearance, a revised maturity date, and a waiver of the principal payment, must all be counted as value received by Anand in exchange for the Mokena trust interest. Upon consideration of these additional factors, the court affirms the decision of the bankruptcy court that Anand received reasonably equivalent value when he executed the CABI in July 1992.

## Motion for Relief from Judgment

Anand contends that the bankruptcy court erred when it denied his motion for relief from judgment pursuant to Rule 60(b)(6).[6] Under Rule 60(b), "upon such terms as are just" the trial court may "relieve a party or a party's legal representative from a final judgment, order, or proceeding" for reasons of mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, or fraud, or if the judgment is void or has been satisfied. The court may also grant relief from the judgment based on "any other reason justifying relief from the operation of the judgment." FED.R.CIV.P. 60(b)(6).

Anand's "other reason justifying relief" is that he believes Judge Barliant's findings and conclusions in his 1997 remand ruling and his 1995 written order are inconsistent. Specifically, he maintains that the 1995 ruling announced "law of the case" to the effect that the Bank's security interest attached in July 1992 by virtue of the CABI, and "there was no property

remaining in Anand which could be the subject of the October 9, 1995[sic] 'absolute transfer.'" (Reply Br., at 10.) According to Anand, on remand Judge Barliant then ruled to the contrary, stating that "the Debtor did not give up all of his interest" by virtue of the July 1992 CABI, but relinquished only a security interest. As Anand put it in his 60(b)(6) motion, in 1997 the bankruptcy court "announced for the first time its finding of law that the Debtor Anand retained a residual ownership interest in the Mokena property after the July 31, 1992 CABI. That finding, if it had been disclosed in the 1995 opinion, would be have [sic] pointed out that the 1995 decision on the Section 547(b) issue was clearly wrong." (Record Ex. 22, at 3.) In short, Anand insists that the remand ruling changed the law of the case, and breathed new life into his claim that the October transfer was a preference under 11 U.S.C. § 547.

Relief under Rule 60(b)(6) requires "a showing of extraordinary circumstances that create a substantial danger that the underlying judgment was unjust." *Margoles v. Johns,* 798 F.2d 1069, 1073 (7th Cir.1986). This court reviews Judge Barliant's disposition of Anand's 60(b)(6) motion under a lenient abuse of discretion standard. As the Seventh Circuit has explained,

> "[A]buse of discretion" in cases under Rule 60(b) is restricted review. It limits review to cases in which no reasonable person could agree with the [trial] court's decision.... [D]ecision under Rule 60(b) is discretion piled on discretion, and as we said in *Metlyn* such doubly discretionary decisions stand unless the judge was very far off base—if the judge relied on forbidden factors or omitted to consider some important relevant factor.

*Tolliver v. Northrop Corp.,* 786 F.2d 316, 318–19 (7th Cir.1986) (citing *Metlyn Real-*

---

6. FED.R.BANKR.P. 9024 provides that, with certain exceptions not relevant here, FED.R.CIV.P. 60(b) "applies in cases under the [Bankruptcy] Code."

*ty Corp. v. Esmark, Inc.,* 763 F.2d 826, 830–32 (7th Cir.1985)).

◼ Anand's argument is based on his assertion that the bankruptcy court ruled in 1995 that he had no interest in the Mokena trust after the July 1992 CABI. But the court has not found, and Anand has not cited, any part of the 1995 order in which Judge Barliant made such a determination. The 1995 ruling simply states that "[s]ince the CABI attached in July, the transfer of the Debtor's 60% interest in the Trust occurred outside the 90 day period" preceding Anand's bankruptcy petition. (Record Ex. 6, at 14.) In the next paragraph, it concludes, "The Bank's Security interest is valid and attached on July 31, 1992. The transfer of the security interest did not occur within the preference period and cannot be avoided under § 547." (*Id.* at 15.) Although Judge Barliant did not explicitly state in 1995 that transfer of a collateral security interest does not encompass ownership interest, as he did in his 1997 ruling, he never expressly held—or established "law of the case"— that Anand conveyed all of his interest by the CABI. Indeed, the bankruptcy court's consistent reference to the CABI as a transfer of security interest in its 1995 order suggests otherwise. Whatever additional explanation Judge Barliant issue in 1997, his remand ruling on the issue of the nature of the CABI was certainly sufficiently consistent with his 1995 order that he was within his discretion in denying Anand's motion.[7] The bankruptcy court's denial of Anand's 60(b)(6) motion is affirmed.

7. The court expresses no opinion on Anand's argument on the merits, *i.e.* that he transferred a residual interest in the Mokena trust in October, and therefore the Section 547 timing requirement was satisfied at least as to that transfer. An appellate court's task in deciding an appeal from a denial of a Rule 60 motion is to address the bases of the trial court's decision, not underlying substantive issues. *See Provident Sav. Bank v. Popovich,* 71 F.3d 696, 698 (7th Cir.1995) ("Because we are limited to the question of whether a dis-

### Remaining Issues

◼ The remaining issues need not occupy the court for long. First, Anand asks "whether the Bankruptcy Court fail[ed] to follow the mandate of the District Court on remand?" (Appellant's Br., at 2.) Judge Duff remanded the constructive fraud claim "in order to allow for more specific findings as to whether Anand received 'reasonably equivalent value.'" 1996 WL 596399, at *8. He refrained from commenting on the merits, and simply "direct[ed] the bankruptcy court to make its determinations more explicit." *Id.* Anand suggests that the bankruptcy court should have made factual findings, instead of drawing his conclusion as a matter of law.[8]

◼ The court does not read Judge Duff's mandate so narrowly. Plainly, it was limited to the issue of reasonably equivalent value in the constructive fraud analysis. *See United States v. Polland,* 56 F.3d 776, 778 (7th Cir.1995) (citing cases for the proposition that a mandate may be limited to a single issue). However, an appellate mandate does not turn a trial court judge "into a robot[ ] mechanically carrying out orders." *Barrow v. Falck,* 11 F.3d 729, 731 (7th Cir.1993). The mandate on remand fixed the issue to be decided, not the methodology to be used. Judge Barliant did not exceed the mandate by determining on remand that the CABI exchanged reasonably equivalent value as a matter of law. *Cf. S & P, Inc. v. Pfeifer,* 189 B.R. 173, 180–81 (N.D.Ind.1995) (finding that bankruptcy court had latitude on remand to use different formula than it used initially to calculate damages).

trict court's Rule 60(b) determination involved an abuse of discretion, we do not review the merits of the underlying judgment, and our review is far narrower than it would be on direct appeal.").

8. Anand's argument on this issue is not presented separately, but woven into his critique of Judge Barliant's handling of the reasonably equivalent value issue.

Lastly, Anand posits, without any elaboration, that "the Bankruptcy Court erred in denying Debtor's motion to re-open the proof on remand to present evidence of insolvency as of July 31, 1992." (Appellant's Br., at 2.) Anand's insolvency is a moot point if he is unable to show that he did not receive reasonably equivalent value. *See* 11 U.S.C. § 547. Because this court affirms the bankruptcy court's conclusions with regard to reasonably equivalent value, the court likewise agrees that the bankruptcy court reasonably declined to explore further the issue of insolvency. Judge Barliant's decision not to reopen the proof on the question of insolvency was not clear error.

### CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is affirmed.